# LUCAS COUNTY COMMON PLEAS COURT

CORNER ADAMS & ERIE STREETS
TOLEDO, OHIO 43604

## SUMMONS
## CIVIL ACTION

FILING TYPE:                                    **OTHER TORT**

STATE FARM MUTUAL                          G-4801-CI-0201701285-000
AUTOMOBILE INSURANCE COMPANY      JUDGE:  GARY G. COOK
C/O CSC-LAWYERS INCORPORATING SERVICE
50 WEST BROAD STREET STE 1800
COLUMBUS, OH 43215

You have the right to seek legal counsel.  If you cannot afford a lawyer, you may contact the Legal Services of Northwest Ohio.  If you do not qualify for services by the Legal Services of Northwest Ohio and do not know an attorney you may contact the Toledo Bar Association's Lawyer Referral Service (419) 242-2000.

You have been named as a defendant in a Complaint filed in this Court by the plaintiff named below.  A copy of the Complaint is attached to this Summons.

You are hereby summoned and required to serve upon the plaintiff's attorney, or upon the plaintiff, if he has no attorney of record, a copy of an answer to the complaint, within twenty-eight (28) days after you receive this Summons, exclusive of the of the day of service   or   to an amended complaint within the remaining response time to the complaint or 14 days, whichever period may be longer.  Your answer must be filed with the Clerk of Court of Common Pleas within three (3) days after the service of a copy of the Answer on the plaintiff's attorney.

If you fail to serve and file your Answer, judgment by default will be rendered against you for the relief demanded in the Complaint.

| PLAINTIFF (S) | ATTORNEY FOR PLAINTIFF(S) |
|---|---|
| AMY HAWKINS | SAMUEL G. BOLOTIN |
| INDIV AND AS PARENT/GUARDIAN OF A H A | 3232 EXECUTIVE PKWY |
| MINOR AND | STE 101 |
| S H A MINOR 4057 AMSTERDAM ROAD | TOLEDO, OH 43606-5527 |
| TOLEDO, OH 43607 | |

BERNIE QUILTER
CLERK OF COURTS

Date: January 24, 2017

*J. Bernie Quilter*                              , Clerk



# IF YOU DO <u>NOT</u> HIRE AN ATTORNEY
## PLEASE READ & RESPOND
### (mark <u>one</u> & respond)

☐  I request to be notified by <u>email</u>

My email address _____

Send email to: Lwatt@co.lucas.oh.us
Subject:  G-4801-CI-0201701285-000
          STATE FARM MUTUAL
AUTOMOBILE INSURANCE COMPANY
Message:  Your email address

**OR**

☐  I request to be notified by <u>regular mail</u>
*(Clerk will forward to Court for approval)*

My mailing address  _____
                    _____
                    _____

**Return this Form with your address to:**
Clerk of Court
Lucas County Common Pleas Court
700 Adams
Toledo, OH  43604

## If you do NOT hire an attorney & fail to respond
## you will NOT receive notification of events related to this case

Case Information is available Online at:
www.co.lucas.oh.us/Clerk
click on the "Dockets Online" link

*Local Rule 5.05 H. SERVICE BY CLERK'S OFFICE Once journalized, the Clerk of courts Office will transmit the entries to the email address submitted by the parties. Counsel for a party or Pro Se litigant representing themselves who do not have an email address may, by motion, request ordinary mail service of entries by the Clerk of Courts Office.*

FILED
LUCAS COUNTY

2017 JAN 23  PM 1:03

COMMON PLEAS COURT
BERNIE QUILTER
CLERK OF COURTS

ORIGINAL

## IN THE COURT OF COMMON PLEAS OF LUCAS COUNTY, OHIO

| | |
|---|---|
| **AMY HAWKINS,** Individually and as Parent/Guardian of A.H., a minor and S.H., a minor, 4057 Amsterdam Road Toledo, OH 43607 | Case No.: CI0201701285 |
| | JUDGE: |
| Plaintiffs, | Assigned to Judge Gary Cook |
| vs. | **COMPLAINT WITH JURY DEMAND, ENDORSED HEREON, REQUEST FOR PRODUCTION OF DOCUMENTS, AND PRAECIPE FOR SERVICE** |
| **STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY** c/o CSC-Lawyers Incorporating Service 50 West Broad St., Ste. 1800 Columbus, OH 43215 | **THE BOLOTIN LAW OFFICES** Samuel G. Bolotin (0014727) 3232 Executive Parkway Toledo, OH 43606 PH:  (419) 539-9200 Fax: (419) 539-7100 |
| and | |
| **JOHN DOE U,** an Insurance Company, Name and Address unknown, | ATTORNEY FOR PLAINTIFFS |
| Defendants. | |

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

Now come the Plaintiffs, by and through their attorney, Samuel G. Bolotin, and states for their Complaint as follows:

### COMMON ALLEGATIONS

1.     That this cause of action accrued on January 31, 2015, and since that time the Plaintiffs have been attempting to resolve this matter with a representative of the Defendants who has failed to negotiate in good faith,

unfortunately requiring Plaintiffs to file this lawsuit.

2.   That at all times material hereto, the Plaintiffs, Amy Hawkins, A.H., a minor, and S.H., a minor, were and are residents of the City of Toledo, County of Lucas, State of Ohio.

3.   That at all times material hereto, the Defendant, State Farm Mutual Automobile Insurance Company, was and is an entity licensed to do business in the State of Ohio.

4.   That at all times material hereto, the Defendant, John Doe U, is an uninsured/underinsured motorists carrier responsible for the payment of Plaintiffs' injuries and damages, whose name and address is presently unknown, and whose name Plaintiffs could not discover.

5.   That the amount here in controversy exceeds Fifteen Thousand and 00/100 ($15,000.00) Dollars, and that this matter is otherwise within the jurisdiction of this Court.

6.   That on January 31, 2015, Plaintiff, Amy Hawkins and A.H., a minor, were in 2003 Kia Sedona, on Conant Street, in the City of Maumee, County of Lucas, State of Ohio.

7.   That on the aforementioned date an underinsured motorist was driving her 2012 Volkswagon Jetta on Conant Street, in the City of Maumee, County of Lucas, State of Ohio.

8.   That on the aforementioned date the underinsured motorist negligently hit the rear end of Plaintiff's vehicle causing a collision and injury to Plaintiffs Amy Hawkins and A.H., a minor.

## COUNT I

9.   That the Plaintiffs incorporate by reference as though fully rewritten paragraphs one (1) through eight (8) above.

10.  That the underinsured motorist, has violated City Ordinance 333.03 (a) and O.R.C. §4511.211 - Assured Clear Distance Ahead, and said

negligence constitutes negligence per se.

11.    That the negligence per se of the underinsured motorist, was the direct and proximate cause of the injuries sustained by Plaintiffs.

12.    That Plaintiffs, Amy Hawkins, and A.H., a minor, as a result of the negligence, recklessness and negligence per se of one or all of the Defendants or their agents, directly and proximately sustained serious and permanent injuries.

a)    That in the care and treatment of said injuries, Plaintiffs were required to submit to numerous and extensive x-rays, examinations, treatments and therapies including taking of drugs and medications in an effort to combat the pain in which they suffered;

b)    That Plaintiffs have incurred substantial expenses to date in the care and treatment of said injuries;

c)    That Plaintiff, Amy Hawkins, has incurred substantial lost wages to date due to her inability to work because of said injuries;

d)    That Plaintiffs have incurred property damage due to the accident;

e)    That said injuries are permanent and partially disabling and Plaintiffs will continue to incur medical and related expenses in the future in an amount which cannot now be determined nor in the exercise of due diligence be ascertained at this time;

f)    That Plaintiffs were required to absent themselves from their usual and normal activities and has suffered and will suffer the loss of enjoyment of life;

g)    That Plaintiffs suffer from pain, shock, nervous reaction and inconvenience and will continue to suffer therefrom in the future with all of the foregoing to their substantial damage.

## COUNT II

13.    That the Plaintiffs incorporate by reference as though fully rewritten, paragraphs one (1) through twelve (12) above.

14.    This is a civil action brought forth by Plaintiffs for declaratory relief pursuant to Section 2721.01 et. seq. of the Ohio Revised Code, and also for monetary damages.

15.    Defendant sold an automobile policy to Plaintiff, Policy No.: C11 2364-B064-35F, attached as Exhibit 1.

16.    This policy provides insurance coverage in the form of underinsurance motorist coverage in the amount of $100,000.00/$300,000.00.

17.    Plaintiffs seek a declaration of the rights, duties and liabilities under this insurance policy with respect to their injuries resulting from an automobile accident with an under insured driver on January 31, 2015.

18.    Defendant in consideration of premiums paid by Plaintiff, duly executed and delivered to Plaintiffs the insurance policy attached hereto as "Exhibit 1".

19.    Plaintiffs have timely paid all premiums due and owing on the above-described insurance policy and has satisfied all other pertinent terms and conditions of this insurance policy.

20.    Each Plaintiff has collected $20,000.00 from the tortfeasor's insurance company, Progressive Insurance, with the permission and consent of the Defendant, State Farm Mutual Automobile Insurance Company.

21.    Defendant has failed to pay Plaintiffs any monies under this policy despite repeated demands for payment.

22.    As a result, an actual controversy of a justiciable nature presently exists between Plaintiff and Defendant concerning the proper construction of the insurance policy and the rights and obligations of the

parties with respect to the underinsurance coverage in question. This controversy is of sufficient immediacy to justify the issuance of a declaratory judgment.

## **COUNT III**

23.   That the Plaintiffs incorporate by reference as though fully rewritten paragraphs one (1) through twenty-two (22) above.

24.   That Defendant, State Farm Mutual Automobile Insurance Company, is Plaintiff's automobile insurance company which has paid or is obligated to pay, expenses for Plaintiff's medical treatment as a result of the accident and negligence of Defendant.   In addition, Defendant State Farm Mutual Automobile Insurance Company, is a Defendant which is obligated to provide Plaintiff with uninsured and/or underinsured motorists' benefits and whose presence as a party is necessary in order that full and adequate relief can be granted, including the determination of such benefits as well as any subrogated interests which they may or will have.

25.   Prior to making its contract with the Plaintiff, Amy Hawkins, and at all other times, material hereto, the Defendant State Farm Mutual Automobile Insurance Company stated it would handle, adjust and compensate promptly for losses, damages, and injuries falling within its contracts of insurance, including but not limited to the contract made with the Plaintiff.

26.   Plaintiffs have made a claim under said contract of insurance as a result of the underinsured motorist loss described above, and Defendant, State Farm Mutual Automobile Insurance Company has failed to pay the loss in a timely manner.

27.   The Defendant, State Farm Mutual Automobile Insurance Company, as a result of the foregoing matter, has breached its contract of insurance and its covenants and undertaking with Plaintiffs to compensate within a reasonable time for all loss of personal injury by an underinsured driver

under that contract, entitling Plaintiffs to damages.

## COUNT IV

28.   That the Plaintiffs incorporate by reference as though fully rewritten paragraphs one (1) through twenty-seven (27) above.

29.   In adjusting Plaintiff's claim, Defendant, State Farm Mutual Automobile Insurance Company, through its agents, adjusters, and investigators, acted unreasonably and without justification, without good faith, and in bad faith.

30.   Defendant, State Farm Mutual Automobile Insurance Company, through its agents, adjusters, and investigators, acted intentionally, willfully, wantonly, oppressively, and with actual malice in refusing to pay Plaintiff's claim.

31.   The actions and omissions of Defendant, State Farm Mutual Automobile Insurance Company, demonstrate malice, aggravated or egregious fraud, oppression, or insult and Defendant, as principal or master of its agents and adjusters, authorized, participated in, and ratified the actions or omissions of its agents and adjusters in this regard.

32.   Plaintiffs pray for judgment on this count, including punitive damages.

## COUNT V

33.   That the Plaintiffs incorporate by reference as though fully rewritten paragraphs one (1) through twenty-one (21) above.

34.   That Defendant, John Doe "U", is an uninsured/underinsured motorists carrier responsible for the payment for Plaintiff's injuries and damages, whose name and address is presently unknown, and whose name Plaintiff could not discover.

## COUNT VI

35.   That the Plaintiffs incorporate by reference as though fully

rewritten paragraphs one (1) through thirty-four (34) above.

36.    That the Plaintiff, Amy Hawkins, is the mother of Plaintiff, A.H., a minor.

37.    That as a result of the injuries to her child, this Plaintiff has been deprived of the pleasures and rights growing out of the parent-child relationship know as consortium.

38.    As a direct and proximate result of the injuries sustained by Plaintiff, A.H., a minor, this Plaintiff was required to render difficult and unusual services to said child and to care for him.

## COUNT VII

39.    That the Plaintiffs incorporate by reference as though fully rewritten paragraphs one (1) through thirty-eight (38) above.

40.    That the Plaintiff, A.H., a minor, and S.H., a minor, are the children of Plaintiff, Amy Hawkins.

41.    That as a result of the injuries to their mother, these Plaintiffs have been deprived of comfort and happiness in the society of their mother and have suffered mental pain and anguish known as consortium.

42.    As a direct and proximate result of the injuries sustained by Plaintiff, Amy Hawkins, these Plaintiffs were required to render difficult and unusual services to said mother and to care for her.

**WHEREFORE**, Plaintiff respectfully prays that this Court enter judgment declaring that:

1.    Defendant pursuant to the terms and conditions of the policy issued to Plaintiffs is liable to pay damages to the Plaintiff their underinsured claim.

2.    Plaintiffs demand judgment against the Defendants, jointly and severally, in an amount that is fair and just, consistent with the evidence and in excess of Twenty-Five Thousand ($25,000.00) Dollars, together with

costs, interest, prejudgment interest, punitive damages, attorney's fees and any other relief the Court deems proper.

Respectfully submitted,

**THE BOLOTIN LAW OFFICES**

_____
Samuel G. Bolotin
Attorney for Plaintiffs

## JURY DEMAND

Plaintiffs demand trial by jury on all issues so triable.

_____
Samuel G. Bolotin
Attorney for Plaintiffs

TO:     State Farm Mutual Automobile Insurance Company
        c/o CSC-Lawyers Incorporating Service
        50 West Broad Street, Suite 1800
        Columbus, OH 43215

### REQUEST FOR PRODUCTION OF DOCUMENTS

Pursuant to Rule 34 of the Ohio Rules of Civil Procedure, the above named Defendant is hereby requested to permit Plaintiff, or someone acting on her behalf, to inspect and copy the following documents:

1)    Any and all subrogation agreements and/or reimbursement agreements which pertain to medical expenses expended by Defendant on behalf of the Plaintiff as a result of the accident of January 31, 2015.

2)    Statement of total subrogatable or reimbursable amount due and owing to Defendant by Plaintiff as a result of the accident of January 31, 2015.

Pursuant to Rule 34, you are required to service a response to this request within twenty-eight (28) day of its service upon you.

Respectfully submitted,

THE BOLOTIN LAW OFFICES

Samuel G. Bolotin
Attorney for Plaintiffs

# EXHIBIT 1

 **StateFarm**

## Certified Policy Record

I, the undersigned, do hereby confirm that I am custodian of the records pertaining to the issuance of policies by State Farm Mutual Automobile Insurance Company.

I certify that the attached documents represent a true and accurate record of the terms and conditions of Policy Number C11 2364-B04-35F including any endorsements, if applicable, for the policy term(s) 8/4/11 - 2/4/12 and insuring HAWKINS, AMY of 4057 AMSTERDAM RD, TOLEDO OH 43607-2314 based on available records.

The following endorsements are included:
6935B Eff 2/4/14

It is State Farm's business practice to print a new Declarations Page only when a policy issuance transaction such as a change of coverage occurs. Therefore, the included Declarations Page which was in effect at the time of loss will indicate the policy period of the last policy issuance transaction.

The policy was in effect on the loss date of 1/31/15.

LISA GRIFFIN
UNDERWRITING TEAM MANAGER

State of Ohio
County of Licking

Subscribed and sworn to before me this ____26th____ day of ____February____, 20_15_.

Notary Public

My Commission Expires: ___1-17-18___

KAREN H JOHNSTON
Notary Public, State of Ohio
My Commission Expires
January 17, 2018

1004516                                                          2000  143551  200  03-21-2012

**State Farm Mutual Automobile Insurance Company**
1440 Granville Road
Newark OH 43093

**DECLARATIONS PAGE**

NAMED INSURED

AT2                    35-2636-66GG      A

HAWKINS, AMY
4057 AMSTERDAM RD
TOLEDO OH 43607-2314

| | |
|---|---|
| POLICY NUMBER | C11 2364-B04-35F |
| POLICY PERIOD AUG 04 2011 to FEB 04 2012 | 12:01 A.M. Standard Time |

STATE FARM PAYMENT PLAN NUMBER

AGENT

DAVE WALBOM
3520 HEATHERDOWNS BLVD STE 1
TOLEDO, OH 43614-3668

PHONE: (419)385-5535

**DO NOT PAY PREMIUMS SHOWN ON THIS PAGE.**
**IF AN AMOUNT IS DUE, THEN A SEPARATE STATEMENT IS ENCLOSED.**

## YOUR CAR

| YEAR | MAKE | MODEL | BODY STYLE | VEHICLE ID NUMBER | CLASS |
|------|------|-------|-----------|-------------------|-------|
| 2003 | KIA | SEDONA | VAN | KNDUP131X36490570 | 1A3F50H000 |

| SYMBOLS | COVERAGE & LIMITS | PREMIUMS |
|---------|-------------------|----------|
| A | Liability Coverage | $147.38 |
| | Bodily Injury Limits | |
| | Each Person, Each Accident | |
| | $100,000    $300,000 | |
| | Property Damage Limit | |
| | Each Accident | |
| | $100,000 | |
| C | Medical Payments Coverage | $12.14 |
| | Limit - Each Person | |
| | $5,000 | |
| D | Comprehensive Coverage | $16.08 |
| G | Collision Coverage - $250 Deductible | $66.70 |
| | Emergency Road Service Coverage | $4.00 |
| R1 | Car Rental and Travel Expenses Coverage | $10.90 |
| | Limit - Car Rental Expense | |
| | Each Day,    Each Loss | |
| | $25    $800 | |
| U | Uninsured Motor Vehicle Coverage | $26.06 |
| | Bodily Injury Limits | |
| | Each Person, Each Accident | |
| | $100,000  $300,000 | |
| | Total premium for AUG 04 2011 to FEB 04 2012 | $279.36  This is not a bill. |

## IMPORTANT MESSAGES

Replaced policy number C112364-35E.

New Policy Form

Guarantee period AUG 04 2011 to AUG 04 2013 subject to General Terms 7, 8, and 9.

## EXCEPTIONS: POLICY BOOKLET & ENDORSEMENTS (See policy booklet & individual endorsements for coverage details.)

YOUR POLICY CONSISTS OF THIS DECLARATIONS PAGE, THE POLICY BOOKLET -
FORM 9835B, AND ANY ENDORSEMENTS THAT APPLY, INCLUDING THOSE ISSUED TO YOU
WITH ANY SUBSEQUENT RENEWAL NOTICE.
CREDITOR- CITIFINANCIAL, 1091 READING RD, MASON OH 45040-1345.
6091W      CERTIFICATE OF GUARANTEED RENEWAL.
ORIGINAL COST OF CUSTOMIZATION NONE OR UP TO $1000.

| | |
|---|---|
| Agent: | DAVE WALBOM |
| Telephone: | (419)385-5535 |
| Prepared | AUG 04 2011    2636-518 |

This policy is issued by State Farm Mutual Automobile Insurance Company.

## MUTUAL CONDITIONS

1. **Membership.** While this policy is in force, the first insured shown on the Declarations Page is entitled to vote at all meetings of members and to receive dividends the Board of Directors in its discretion may declare in accordance with reasonable classifications and groupings of policyholders established by such Board.

2. **No Contingent Liability.** This policy is non-assessable.

3. **Annual Meeting.** The annual meeting of the members of the company shall be held at its home office at Bloomington, Illinois, on the second Monday of June at the hour of 10:00 A.M., unless the Board of Directors shall elect to change the time and place of such meeting, in which case, but not otherwise, due notice shall be mailed each member at the address disclosed in this policy at least 10 days prior thereto.

In Witness Whereof, the State Farm Mutual Automobile Insurance Company has caused this policy to be signed by its President and Secretary at Bloomington, Illinois.

Secretary

President

**6091W CERTIFICATE OF GUARANTEED RENEWAL**

This endorsement is a part of the policy. Except for the changes this endorsement makes, all other provisions of the policy remain the same and apply to this endorsement.

This endorsement is issued by the **STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY** of Bloomington, Illinois.

1. *We* will not cancel or nonrenew this policy as long as:

   a. this policy insures a *private passenger car*;

   b. premiums are paid when due;

   c. all drivers of *your car* maintain valid drivers licenses;

   d. *you* continue to reside in an area in which State Farm Mutual Automobile Insurance Company sells automobile insurance and has the Certificate of Guaranteed Renewal available for use; and

   e. no *person* other than *you* becomes a named insured on this policy.

2. *You* will be able to select from those coverages which continue to be available from State Farm Mutual Automobile Insurance Company.

3. Coverage will be provided by *our* Car Policy, including any revisions that may be made to it.

© Copyright, State Farm Mutual Automobile Insurance Company, 2008

6091W

Policy Number: C11 2364-B04-35F
Sheet 1 of 1

PLEASE ATTACH TO YOUR POLICY BOOKLET

State Farm

## 6935B AMENDATORY ENDORSEMENT

This endorsement is a part of the policy. Except for the changes this endorsement makes, all other provisions of the policy remain the same and apply to this endorsement.

1. **LIABILITY COVERAGE**

   **Exclusions**

   Exclusion 2. is changed to read:

   > THERE IS NO COVERAGE FOR AN *INSURED*:
   >
   > 2. FOR DAMAGES ARISING OUT OF AND RESULTING FROM *BODILY INJURY* TO:
   >    a. *YOU*;
   >    b. *RESIDENT RELATIVES*; AND
   >    c. ANY OTHER *PERSON* WHO BOTH RESIDES PRIMARILY WITH AN *INSURED* AND WHO:
   >       (1) IS RELATED TO THAT *INSURED* BY BLOOD, MARRIAGE, OR ADOPTION; OR
   >       (2) IS A WARD OR FOSTER CHILD OF THAT *INSURED*;

   This exclusion does not apply if:

   a. this policy does not provide Uninsured Motor Vehicle Coverage; and

   b. the *bodily injury* results in death.

2. **PHYSICAL DAMAGE COVERAGES**

   Item 4.a. of **Insuring Agreements** is replaced by the following:

   > 4. **Car Rental and Travel Expenses Coverage**
   >    a. **Car Rental Expense**
   >       We will pay the *daily rental charge* incurred when an *insured* rents a *car* from a *car business* while *your car* or a *newly acquired car* is:
   >       (1) not drivable; or
   >       (2) being repaired
   >
   >       as a result of a *loss* which would be payable under Comprehensive Coverage or Collision Coverage.
   >
   >       *We* will pay this *daily rental charge* incurred during a period that:

   (1) starts on the date:

   (a) the vehicle is not drivable as a result of the *loss*; or

   (b) the vehicle is left at a repair facility if the vehicle is drivable; and

   (2) ends on the earliest of:

   (a) the date the vehicle has been repaired or replaced;

   (b) the date *we* offer to pay for the *loss* if the vehicle is repairable but *you* choose to delay repairs; or

   (c) seven days after *we* offer to pay for the *loss* if the vehicle is:

   (i) a total loss as determined by *us*; or

   (ii) stolen and not recovered.

   The amount of any such *daily rental charge* incurred by an *insured* must be reported to *us* before *we* will pay such amount.

3. **GENERAL TERMS**

   a. 7. Renewal is changed to read:

      > 7. **Renewal**
      >    *We* agree to renew this policy for the next policy period upon payment of the renewal premium when due, unless *we* mail or deliver a nonrenewal notice or a cancellation notice as set forth in 8. and 9. below.

   b. 8. Nonrenewal is changed to read:

      > 8. **Nonrenewal**
      >    If *we* decide not to renew this policy, then, at least 30 days before the end of the current policy period, *we* will mail or deliver a nonrenewal notice to the most recent policy address that *we* have on record for the named insured who is shown on the Declarations Page.

©, Copyright, State Farm Mutual Automobile Insurance Company, 2013

6935B

c. Item b. of 9. **Cancellation** is changed to read:

    b. **How and When We May Cancel**

*We* may cancel this policy by mailing or delivering a written notice to the most recent policy address that *we* have on record for the named insured who is shown on the Declarations Page. The notice will provide the date cancellation is effective.

(1) If *we* mail or deliver a cancellation notice:

    (a) during the first 89 days following this policy's effective date;

    (b) because the premium is not paid when due; or

    (c) applicable to only coverages other than Liability Coverage, Medical Payments Coverage, or Uninsured Motor Vehicle Coverage

then the date cancellation is effective will be at least 10 days after the date *we* mail or deliver the cancellation notice.

Otherwise, the date cancellation is effective will be at least 30 days after the date *we* mail or deliver the cancellation notice.

(2) After this policy has been in force for more than 89 days, unless notice of cancellation was mailed to *you* within that time, *we* will not cancel Liability Coverage, Medical Payments Coverage, or Uninsured Motor Vehicle Coverage before the end of the current policy period unless:

(a) there was fraud, concealment, or misrepresentation by an *insured* of any material fact in the procurement of this policy, in the renewal of this policy, or in the submission of a claim under this policy;

(b) *you*, or any *resident relative* has lost driving privileges by the suspension, revocation, or expiration of his or her driver's license. If the *person* who lost driving privileges is other than the named insured or the principal operator, *we* will not cancel this policy during the current policy period. However, *we* have the right to exclude such *person* from any coverage provided by this policy anytime during the current policy period by mailing notice to *you* at least 30 days before the exclusion is effective;

(c) *you* fail to pay the premium when due; or

(d) *you* move to, or change your car's registration to, a state or country where *we* are not authorized to write coverage.

However, the above limitations on *our* right to cancel do not apply if one of the *State Farm Companies* expresses a willingness to issue another policy.

©, Copyright, State Farm Mutual Automobile Insurance Company, 2013

6935B



**State Farm®**

SAMPLE

Please read the policy carefully. If there is an accident, contact your State Farm agent or one of our Claim Offices at once. (See "INSURED'S DUTIES" in this policy booklet.)

#### IMPORTANT NOTICE

Any application for the insurance provided by this policy, including any warranty made by the applicant, is made a part of this policy.

## State Farm®
## Car Policy
## Booklet

**Ohio**
Policy Form 9835B

# CONTENTS

THIS POLICY .................................................. 3

DEFINITIONS ................................................. 4

LIABILITY COVERAGE ................................. 6
    Additional Definition .................................... 6
    Insuring Agreement ...................................... 6
    Supplementary Payments ............................... 6
    Limits ........................................................ 7
    Nonduplication ............................................ 7
    Exclusions .................................................. 7
    If Other Liability Coverage Applies ................ 8
    Required Out-of-State Liability Coverage ........ 9
    Financial Responsibility Certification ............. 9

MEDICAL PAYMENTS COVERAGE ............... 9
    Additional Definitions ................................... 9
    Insuring Agreement ..................................... 10
    Determining Medical Expenses ..................... 10
    Arbitration ................................................. 10
    Limit ........................................................ 11
    Nonduplication .......................................... 11
    Exclusions ................................................ 11
    If Other Medical Payments Coverage or
    Similar Vehicle Insurance Applies ................ 12
    Payment of Medical Expenses ..................... 13
    Our Payment Options ................................. 13

UNINSURED MOTOR VEHICLE
COVERAGE ................................................ 13
    Additional Definitions ................................. 13
    Insuring Agreement ..................................... 14
    Consent to Settlement ................................. 14
    Deciding Fault and Amount .......................... 14
    Limits ...................................................... 15
    Nonduplication .......................................... 15
    Exclusions ................................................ 16
    If Other Uninsured Motor Vehicle Coverage
    Applies ..................................................... 16
    Our Payment Options ................................. 17

UNINSURED MOTOR VEHICLE
PROPERTY DAMAGE COVERAGE .............. 17
    Additional Definitions ................................. 17
    Insuring Agreement ..................................... 17
    Limits and Settlement ................................. 17
    Nonduplication .......................................... 18
    Exclusions ................................................ 18
    If Other Uninsured Motor Vehicle Property
    Damage Coverage Applies ........................... 18

Our Payment Options ..................................... 19

PHYSICAL DAMAGE COVERAGES ............. 19
    Additional Definitions ................................. 19
    Insuring Agreements ................................... 20
    Supplementary Payments – Comprehensive
    Coverage and Collision Coverage ................. 2
    Limits and Loss Settlement – Comprehensive
    Coverage and Collision Coverage ................. 2
    Limits – Car Rental and Travel Expenses
    Coverage ................................................... 2
    Nonduplication .......................................... 2
    Exclusions ................................................ 2
    If Other Physical Damage Coverage or Similar
    Coverage Applies ....................................... 2
    Financed Vehicle ....................................... 2
    Our Payment Options ................................. 2

DEATH, DISMEMBERMENT AND
LOSS OF SIGHT COVERAGE ..................... 2
    Additional Definition ................................. 2
    Insuring Agreement ................................... 2
    Benefit ..................................................... 2
    Exclusions – Death, Dismemberment and
    Loss of Sight Coverage and Loss of Earnings
    Coverage ................................................... 2
    Our Payment Options – Death, Dismemberment
    and Loss of Sight Coverage and Loss of
    Earnings Coverage ..................................... 2

LOSS OF EARNINGS COVERAGE ............... 2
    Additional Definitions ................................. 2
    Insuring Agreement ................................... 2
    Limit ........................................................ 2
    Exclusions – Death, Dismemberment and
    Loss of Sight Coverage and Loss of Earnings
    Coverage ................................................... 2
    Our Payment Options – Death, Dismemberment
    and Loss of Sight Coverage and Loss of
    Earnings Coverage ..................................... 2

INSURED'S DUTIES ...................................
    Notice to Us of an Accident or Loss .............
    Notice to Us of a Claim or Lawsuit ..............
    Insured's Duty to Cooperate With Us ............
    Questioning Under Oath ...............................
    Other Duties Under the Physical
    Damage Coverages .....................................

Other Duties Under Medical Payments Coverage, Uninsured Motor Vehicle Coverage, Death, Dismemberment and Loss of Sight Coverage, and Loss of Earnings Coverage ............................ 28

Other Duties Under Uninsured Motor Vehicle Property Damage Coverage ........ 29

GENERAL TERMS ...................................... 29

When Coverage Applies ........................ 29

Where Coverage Applies ...................... 29

Limited Coverage in Mexico ................ 29

Newly Owned or Newly Leased Car ...... 30

Changes to This Policy ........................ 30

Premium ................................................ 31

Renewal ................................................ 31

Nonrenewal ............................................ 31

Cancellation .......................................... 32

Assignment ............................................ 32

Bankruptcy or Insolvency of the Insured .... 32

Concealment or Fraud .......................... 32

Our Right to Recover Our Payments ...... 32

Legal Action Against Us ........................ 33

Choice of Law ...................................... 33

Interest .................................................. 34

Severability ............................................ 34

## THIS POLICY

1. This policy consists of:

    a. the most recently issued Declarations Page;

    b. the policy booklet version shown on that Declarations Page; and

    c. any endorsements that apply, including those listed on that Declarations Page as well as those issued in connection with any subsequent renewal of this policy.

2. This policy contains all of the agreements between all named insureds who are shown on the Declarations Page and all applicants and:

    a. *us*; and

    b. any of *our* agents.

3. *We* agree to provide insurance according to the terms of this policy:

    a. based on payment of premium for the coverages chosen; and

    b. unless otherwise stated in "EXCEPTIONS, POLICY BOOKLET, & ENDORSEMENTS" on the Declarations Page, in reliance on the following statements:

        (1) The named insured shown on the Declarations Page is the sole owner of *your car*;

        (2) Neither *you* nor any member of *your* household has, within the past three years, had either:

            (a) a license to drive; or

            (b) a vehicle registration suspended, revoked, or refused.

        (3) *Your car* is used for pleasure and business.

4. All named insureds shown on the Declarations Page and all applicants agree by acceptance of this policy that:

    a. the statements in 3.b. above are made by such named insured or applicant and are true;

    b. the responses on the application as to whether *you*, any member of *your* household, or any regular driver has had an accident, sustained a loss, or has been fined, convicted or forfeited bail for traffic violations, are true; and

    c. *we* provide this insurance on the basis those statements are true.

5. Any application for the insurance provided by this policy, including any warranty made by any named insured shown on the Declarations Page or any applicant, is a part of this policy.

6. All statements in either the application for insurance or on the Declarations Page are warranties. This policy shall be void from its inception if any warranty made by any named insured shown on the Declarations Page or any applicant is found to be false.

7. *Your* purchase of this policy may allow:

    a. *you* to purchase or obtain certain coverages, coverage options, coverage deductibles, coverage limits, or coverage terms on other products from the *State Farm Companies*, subject to their applicable eligibility rules; or

    b. the premium or price to vary for other:

(1) insurance;
(2) financial;
(3) vehicle;
(4) home;
(5) cell phone;
(6) electronic; or
(7) travel

products or services purchased by *you*. Such other products or services must be provided by the *State Farm Companies* or by an organization that has entered into an agreement or contract with the *State Farm Companies*. The *State Farm Companies* do not warrant the merchantability, fitness, or quality of any product or service offered or provided by that organization.

## DEFINITIONS

*We* define certain words and phrases below for use throughout the policy. Each coverage includes additional definitions only for use with that coverage. These definitions apply to the singular, plural, possessive, and any other form of these words and phrases. Defined words and phrases are printed in boldface italics.

*Bodily Injury* means bodily injury to a *person* and sickness, disease, or death that results from it.

*Car* means a land motor vehicle with four or more wheels, designed for use primarily on public roads. *Car* does not include:

1. Any vehicle while located for use as a dwelling or other premises; or

2. A truck-tractor designed to pull any type of trailer.

*Car Business* means a business or job where the purpose is to sell, lease, rent, repair, service, modify, transport, store, or park land motor vehicles or any type of trailer.

*Fungi* means any type or form of fungus or fungi and includes:

1. Mold;

2. Mildew; and

3. Any of the following that are produced or released by fungi:
   a. Mycotoxins;
   b. Spores;
   c. Scents; or
   d. Byproducts.

*Newly Acquired Car* means a *car* newly *owned by you*. A *car* ceases to be a *newly acquired car* on the earlier of:

1. the effective date and time of a policy, including any binder, issued by *us* or any other company that describes the *car* as an insured vehicle; or

2. the end of the 14th calendar day immediately following the date the *car* is delivered to *you*.

If a *newly acquired car* is not otherwise afforded comprehensive coverage or collision coverage by this or any other policy, then this policy will provide Comprehensive Coverage or Collision Coverage for that *newly acquired car*, subject to a deductible of $500. Any coverage provided as a result of this paragraph will apply only until the end of the 5th calendar day immediately following the date the *newly acquired car* is delivered to *you*.

*Non-Owned Car* means a *car* that is in the lawful possession of *you* or any *resident relative* and that neither:

1. is *owned by*:
   a. *you*;
   b. any *resident relative*;
   c. any other *person* who resides primarily in *your* household; or
   d. an employer of any *person* described in a., b., or c. above; nor

2. has been operated by, rented by, or in the possession of:
   a. *you*; or
   b. any *resident relative*;
   during any part of each of the 31 or more consecutive days immediately prior to the date of the accident or *loss*.

*Occupying* means in, on, entering, or exiting.

*Our* means the Company issuing this policy as shown on the Declarations Page.

*Owned By* means:

1. owned by;

2. registered to; or

3. leased, if the lease is written for a period of 31 or more consecutive days; to:

4
9835B

**Pedestrian** means a *person* who is not *occupying*:

1. a motorized vehicle; or

2. a vehicle designed to be pulled by a motorized vehicle.

**Person** means a human being.

**Private Passenger Car** means:

1. a *car* of the private passenger type, other than a pickup truck, van, minivan, or sport utility vehicle, designed primarily to carry *persons* and their luggage; or

2. a pickup truck, van, minivan, or sport utility vehicle:

   a. while not used for:

      (1) wholesale; or

      (2) retail

      pickup or delivery; and

   b. that has a Gross Vehicle Weight Rating of 10,000 pounds or less.

**Resident Relative** means a *person*, other than *you*, who resides primarily with the first *person* shown as a named insured on the Declarations Page and who is:

1. related to that named insured or his or her spouse by blood, marriage, or adoption, including an unmarried and unemancipated child of either who is away at school and otherwise maintains his or her primary residence with that named insured; or

2. a ward or a foster child of that named insured, his or her spouse, or a *person* described in 1. above.

**State Farm Companies** means one or more of the following:

1. State Farm Mutual Automobile Insurance Company;

2. State Farm Fire and Casualty Company; and

3. Subsidiaries or affiliates of either 1. or 2. above.

**Temporary Substitute Car** means a *car* that is in the lawful possession of the *person* operating it and that:

1. replaces *your car* for a short time while *your car* is out of use due to its:

   a. breakdown;

   b. repair;

   c. servicing;

   d. damage; or

   e. theft; and

2. neither *you* nor the *person* operating it own or have registered.

If a *car* qualifies as both a *non-owned car* and a *temporary substitute car*, then it is considered a *temporary substitute car* only.

**Trailer** means:

1. a trailer:

   a. designed to be pulled by a *private passenger car*;

   b. not designed to carry *persons*; and

   c. while not used as premises for office, store, or display purposes; or

2. a farm implement or farm wagon while being pulled on public roads by a *car*.

**Us** means the Company issuing this policy as shown on the Declarations Page.

**We** means the Company issuing this policy as shown on the Declarations Page.

**You** or **Your** means the named insured or named insureds shown on the Declarations Page. If a named insured shown on the Declarations Page is a *person*, then "*you*" or "*your*" includes the spouse of the first *person* shown as a named insured if the spouse resides primarily with that named insured.

**Your Car** means the vehicle shown under "YOUR CAR" on the Declarations Page. *Your Car* does not include a vehicle that *you* no longer own or lease.

If a *car* is shown on the Declarations Page under "YOUR CAR", and *you* ask *us* to replace it with a *car* newly *owned by you*, then the *car* being replaced will continue to be considered *your car* until the earliest of:

1. the end of the 30th calendar day immediately following the date the *car* newly *owned by you* is delivered to *you*;

2. the date this policy is no longer in force; or

3. the date *you* no longer own or lease the *car* being replaced.

# LIABILITY COVERAGE

This policy provides Liability Coverage if "A" is shown under "SYMBOLS" on the Declarations Page.

**Additional Definition**

*Insured* means:

1. *you* and *resident relatives* for:
   a. the ownership, maintenance, or use of:
      (1) *your car*;
      (2) a *newly acquired car*; or
      (3) a *trailer*; and
   b. the maintenance or use of:
      (1) a *non-owned car*; or
      (2) a *temporary substitute car*.
2. *you* for the maintenance or use of a *car owned by*, or furnished by, an employer to, a *person* who resides primarily in *your* household. The *car* cannot be *owned by you* or furnished by *your* employer.
3. *your* employee for his or her use of:
   a. *your car*;
   b. a *newly acquired car*;
   c. a *temporary substitute car*; or
   d. a *trailer* while attached to a *car* described in a., b., or c. above.
   If that employee is acting within the scope and course of his or her employment.
4. any other *person* who is not insured for vehicle liability coverage by any other insurance policy, a self-insurance program, or a liability bond for his or her use of:
   a. *your car*;
   b. a *newly acquired car*;
   c. a *temporary substitute car*; or
   d. a *trailer* while attached to a *car* described in a., b., or c. above.
   Such vehicle must be used within the scope of *your* consent; and
5. any other *person* or organization vicariously liable for the use of a vehicle by an *insured* as defined in 1., 2., 3., or 4. above, but only for such vicarious liability. This provision applies only if the vehicle is neither *owned by*, nor hired by, that other *person* or organization.

*Insured* does not include the United States of America or any of its agencies.

**Insuring Agreement**

1. *We* will pay damages an *insured* becomes legally liable to pay because of:
   a. *bodily injury* to others; and
   b. damage to property

caused by an accident that involves a vehicle for which that *insured* is provided Liability Coverage by this policy.

2. *We* have the right to:
   a. investigate, negotiate, and settle any claim or lawsuit;
   b. defend an *insured* in any claim or lawsuit, with attorneys chosen by *us*; and
   c. appeal any award or legal decision for damages payable under this policy's Liability Coverage.

**Supplementary Payments**

*We* will pay, in addition to the damages described in the **Insuring Agreement** of this policy's Liability Coverage, those items listed below that result from such accident.

1. Attorney fees for attorneys chosen by *us* to defend an *insured* who is sued for such damages. *We* have no duty to pay attorney fees incurred after *we* deposit in court or pay the amount due under the **Insuring Agreement** of this policy's Liability Coverage.
2. Court costs awarded by the court against an *insured* and resulting from that part of the lawsuit:
   a. that seeks damages payable under this policy's Liability Coverage; and
   b. against which *we* defend an *insured* with attorneys chosen by *us*.
   *We* have no duty to pay court costs incurred after *we* deposit in court or pay the amount due under the **Insuring Agreement** of this policy's Liability Coverage;
3. Interest the *insured* is legally liable to pay on damages payable under the **Insuring Agreement** of this policy's Liability Coverage:
   a. before a judgment, but only the interest on the lesser of:
      (1) that part of the damages *we* pay; or
      (2) this policy's applicable Liability Coverage limit; and
   b. after a judgment.
   *We* have no duty to pay interest that accrues after *we* deposit in court, pay, or offer to pay, the amount due under the **Insuring Agreement** of this policy's Liability Coverage. *We* also have no duty to pay interest that accrues on any damages paid or payable by a party other than the *insured* or *us*;
4. Premiums for bonds, provided by a company chosen by *us*, required to appeal a decision in a lawsuit against an *insured*. *We* have no duty to:

a. pay for any bond with a face amount that exceeds this policy's applicable Liability Coverage limit;

b. furnish or apply for any bonds; or

c. pay premiums for bonds purchased after *we* deposit in court, pay, or offer to pay, the amount due under the **Insuring Agreement** of this policy's Liability Coverage; and

5. The following costs and expenses if related to and incurred after a lawsuit has been filed against an *insured*:

a. Loss of wages or salary, but not other income, up to $200 for each day an *insured* attends, at *our* request:

(1) an arbitration;

(2) a mediation; or

(3) a trial of a lawsuit; and

b. Reasonable expenses incurred by an *insured* at *our* request, other than loss of wages, salary, or other income.

The amount of any of the costs or expenses listed above that are incurred by an *insured* must be reported to *us* before *we* will pay such incurred costs or expenses.

## Limits

The Liability Coverage limits for *bodily injury* are shown on the Declarations Page under "Liability Coverage – Bodily Injury Limits – Each Person, Each Accident."

The limit shown under "Each Person" is the most *we* will pay for all damages arising out of and resulting from *bodily injury* to any one *person* injured in any one accident, including all damages sustained by other *persons* arising out of and resulting from that *bodily injury*. The limit shown under "Each Accident" is the most *we* will pay, subject to the limit for "Each Person", for all damages arising out of and resulting from *bodily injury* to two or more *persons* injured in the same accident.

The Liability Coverage limit for damage to property is shown on the Declarations Page under "Liability Coverage – Property Damage Limit – Each Accident". The limit shown is the most *we* will pay for all damages resulting from damage to property in any one accident.

These Liability Coverage limits are the most *we* will pay regardless of the number of:

1. *insureds*;

2. claims made;

3. vehicles insured; or

4. vehicles involved in the accident.

## Nonduplication

*We* will not pay any damages or expenses under Liability Coverage:

1. that have already been paid as expenses under Medical Payments Coverage of any policy issued by the *State Farm Companies* to *you* or any *resident relative*; or

2. that have already been paid under Uninsured Motor Vehicle Coverage of any policy issued by the *State Farm Companies* to *you* or any *resident relative*.

## Exclusions

THERE IS NO COVERAGE FOR AN *INSURED*:

1. WHO INTENTIONALLY CAUSES *BODILY INJURY* OR DAMAGE TO PROPERTY;

2. FOR DAMAGES ARISING OUT OF AND RESULTING FROM *BODILY INJURY* TO:

a. *YOU*;

b. *RESIDENT RELATIVES*; AND

c. ANY OTHER *PERSON* WHO BOTH RESIDES PRIMARILY WITH AN *INSURED* AND WHO:

(1) IS RELATED TO THAT *INSURED* BY BLOOD, MARRIAGE, OR ADOPTION; OR

(2) IS A WARD OR FOSTER CHILD OF THAT *INSURED*;

3. OR FOR THAT *INSURED'S* INSURER FOR ANY OBLIGATION UNDER ANY TYPE OF WORKERS' COMPENSATION, DISABILITY, OR SIMILAR LAW;

4. FOR DAMAGES ARISING OUT OF AND RESULTING FROM *BODILY INJURY* TO THAT *INSURED'S* EMPLOYEE WHICH ARISES OUT OF THAT EMPLOYEE'S EMPLOYMENT. This exclusion does not apply to that *insured's* household employee who is neither covered, nor required to be covered, under workers' compensation insurance;

5. FOR DAMAGES ARISING OUT OF AND RESULTING FROM *BODILY INJURY* TO THAT *INSURED'S* FELLOW EMPLOYEE WHILE THE FELLOW EMPLOYEE IS IN THE COURSE AND SCOPE OF HIS OR HER EMPLOYMENT. This exclusion does not apply to *you* and *resident relatives* who are legally liable for *bodily injury* to fellow employees;

6. FOR DAMAGES ARISING OUT OF AND RESULTING FROM THE OWNERSHIP, MAINTENANCE, OR USE OF A VEHICLE WHILE IT IS RENTED TO OR LEASED TO OTHERS BY AN *INSURED*;

7. FOR DAMAGES ARISING OUT OF AND RESULTING FROM THE OWNERSHIP, MAINTENANCE, OR USE OF A VEHICLE WHILE IT IS BEING USED TO CARRY *PERSONS* FOR A CHARGE. This exclusion does not apply to the use of a *private passenger car* on a share-the-expense basis;

8. WHILE MAINTAINING OR USING A VEHICLE IN CONNECTION WITH THAT *INSURED'S* EMPLOYMENT IN OR ENGAGEMENT OF ANY KIND IN A *CAR BUSINESS*. This exclusion does not apply to:

a. *you*;

b. any *resident relative*; or

c. any agent, employee, or business partner of a. or b. above

while maintaining or using *your car*, a *newly acquired car*, a *temporary substitute car*, or a *trailer owned by you*;

9. WHILE THAT *INSURED* IS VALET PARKING A VEHICLE;

10. WHILE MAINTAINING OR USING ANY VEHICLE OTHER THAN *YOUR CAR*, A *NEWLY ACQUIRED CAR*, A *TEMPORARY SUBSTITUTE CAR*, OR A *TRAILER* IN ANY BUSINESS OR OCCUPATION OTHER THAN A *CAR BUSINESS* OR VALET PARKING. This exclusion does not apply to the maintenance or use of a *private passenger car*;

11. FOR DAMAGE TO PROPERTY WHILE IT IS:

a. OWNED BY;

b. RENTED TO;

c. USED BY;

d. IN THE CARE OF; OR

e. TRANSPORTED BY

*YOU*, A *RESIDENT RELATIVE*, OR THE *PERSON* WHO IS LEGALLY LIABLE FOR THE DAMAGE. This exclusion does not apply to damage to a:

a. motor vehicle *owned by* the employer of *you* or the employer of any *resident relative* if such damage is caused by an *insured* while operating another motor vehicle;

b. residence while rented to or leased to an *insured*; or

c. private garage while rented to or leased to an *insured*;

12. FOR LIABILITY ASSUMED UNDER ANY CONTRACT OR AGREEMENT;

13. FOR ANY ORDER OF RESTITUTION ISSUED BY A COURT IN A CRIMINAL PROCEEDING OR EQUITABLE ACTION;

14. WHILE USING A *TRAILER* WITH A MOTOR VEHICLE IF THAT *INSURED* IS NOT PROVIDED LIABILITY COVERAGE BY THIS POLICY FOR THE USE OF THAT MOTOR VEHICLE;

15. FOR THE OWNERSHIP, MAINTENANCE, OR USE OF ANY VEHICLE WHILE IT IS:

a. OFF PUBLIC ROADS AND BEING PREPARED FOR, USED IN PRACTICE FOR, OR OPERATED IN ANY RACING CONTEST, SPEED CONTEST, HILL-CLIMBING CONTEST, JUMPING CONTEST, OR ANY SIMILAR CONTEST; OR

b. ON A TRACK DESIGNED PRIMARILY FOR RACING, OR HIGH-SPEED DRIVING. This exclusion (15.b.) does not apply if the vehicle is being used in connection with an activity other than racing, high-speed driving, or any type of competitive driving;

16. WHO IS AN EMPLOYEE OF THE UNITED STATES OF AMERICA OR ANY OF ITS AGENCIES, IF THE PROVISIONS OF THE FEDERAL TORT CLAIMS ACT APPLY;

17. FOR PUNITIVE OR EXEMPLARY DAMAGES, OR ATTORNEY FEES ASSOCIATED WITH THESE DAMAGES; OR

18. WHILE *YOUR CAR* OR A *NEWLY ACQUIRED CAR* IS SUBJECT TO ANY LIEN OR SALES AGREEMENT NOT SHOWN ON THE DECLARATIONS PAGE. This does not apply to *you*.

## If Other Liability Coverage Applies

1. If Liability Coverage provided by this policy and one or more other Car Policies issued to *you* or any *resident relative* by the *State Farm Companies* apply to the same accident, then:

a. the Liability Coverage limits of such policies will not be added together to determine the most that may be paid; and

b. the maximum amount that may be paid from all such policies combined is the single, highest, applicable, limit provided by any one of the policies. *We* may choose one or more policies from which to make payment.

2. The Liability Coverage provided by this policy applies as primary coverage for the ownership, maintenance, or use of *your car* or a *trailer* attached to it.

a. If:

(1) this is the only Car Policy issued to *you* or any *resident relative* by the *State Farm Companies* that provides Liability Coverage which applies to the accident as primary coverage; and

(2) liability coverage provided by one or more sources other than the *State Farm Companies* also applies as primary coverage for the same accident,

then *we* will pay the proportion of damages payable as primary that *our* applicable limit bears to the sum of *our* applicable limit and the limits of all other liability coverage that apply as primary coverage.

b. If:

(1) more than one Car Policy issued to *you* or any *resident relative* by the *State Farm Companies* provides Liability Coverage which applies to the accident as primary coverage; and

(2) liability coverage provided by one or more sources other than the *State Farm Companies* also applies as primary coverage for the same accident,

then the *State Farm Companies* will pay the proportion of damages payable as primary that the maximum amount that may be paid by the *State Farm Companies* as determined in 1. above bears to the sum of such amount and the limits of all other liability coverage that apply as primary coverage.

3. Except as provided in 2. above, the Liability Coverage provided by this policy applies as excess coverage.

a. If:

(1) this is the only Car Policy issued to *you* or any *resident relative* by the *State Farm Companies* that provides Liability Coverage which applies to the accident as excess coverage; and

(2) liability coverage provided by one or more sources other than the *State Farm Companies* also applies as excess coverage for the same accident,

then *we* will pay the proportion of damages payable as excess that *our* applicable limit bears to the sum of *our* applicable

limit and the limits of all other liability coverage that apply as excess coverage.

b. If:

(1) more than one Car Policy issued to *you* or any *resident relative* by the *State Farm Companies* provides Liability Coverage which applies to the accident as excess coverage; and

(2) liability coverage provided by one or more sources other than the *State Farm Companies* also applies as excess coverage for the same accident,

then the *State Farm Companies* will pay the proportion of damages payable as excess that the maximum amount that may be paid by the *State Farm Companies* as determined in 1. above bears to the sum of such amount and the limits of all other liability coverage that apply as excess coverage.

**Required Out-of-State Liability Coverage**

If:

1. an *insured* is in another state of the United States of America, a territory or possession of the United States of America, the District of Columbia, or any province or territory of Canada, and as a nonresident becomes subject to its motor vehicle compulsory insurance law, financial responsibility law, or similar law; and

2. this policy does not provide at least the minimum liability coverage required by such law for such nonresident,

then this policy will be interpreted to provide the minimum liability coverage required by such law.

This provision does not apply to liability coverage required by law for motor carriers of passengers or motor carriers of property.

**Financial Responsibility Certification**

When this policy is certified under any law as proof of future financial responsibility, and while required during the policy period, this policy will comply with such law to the extent required.

## MEDICAL PAYMENTS COVERAGE

This policy provides Medical Payments Coverage if "C" is shown under "SYMBOLS" on the Declarations Page.

**Additional Definitions**

*Insured* means:

1. *you* and *resident relatives*:

a. while *occupying*:

(1) *your car*;

(2) a *newly acquired car*;

(3) a *temporary substitute car*;

(4) a *non-owned car*; or

(5) a *trailer* while attached to a *car* described in (1), (2), (3), or (4) above; or

b. if struck as a *pedestrian* by a motor vehicle or any type of trailer; and

2. any other *person* while *occupying*:

a. *your car*;

b. a *newly acquired car*;

c. a *temporary substitute car*; or

d. a *trailer* while attached to a *car* described in a., b., or c. above.

Such vehicle must be used within the scope of *your* consent.

***Medical Expenses*** mean *reasonable expenses* for *medical services*.

***Medical Services*** mean treatments, procedures, products, and other services that are:

1. necessary to achieve maximum medical improvement for the *bodily injury*;

2. rendered by a healthcare provider:

a. who is licensed as a healthcare provider if a license is required by law; and

b. within the legally authorized scope of that healthcare provider's practice;

3. commonly and customarily recognized throughout the medical profession and within the United States of America as appropriate for the treatment of the *bodily injury*;

4. primarily designed to serve a medical purpose;

5. not experimental; and

6. not for research purposes.

***Reasonable Expenses*** mean the lowest one of the following charges:

1. The usual and customary fees charged by a majority of healthcare providers who provide similar *medical services* in the geographical area in which the charges were incurred;

2. The fee specified in any fee schedule:

a. applicable to medical payments coverage, no-fault coverage, or personal injury protection coverage included in motor vehicle liability policies issued in the state where *medical services* are provided; and

b. as prescribed or authorized by the law of the state where *medical services* are provided;

3. The fees agreed to by both the *insured's* healthcare provider and *us*; or

4. The fees agreed upon between the *insured's* healthcare provider and a third party when *we* have a contract with such third party.

**Insuring Agreement**

*We* will pay:

1. *medical expenses* incurred because of *bodily injury* that is sustained by an *insured* and caused by a motor vehicle accident if:

a. that *insured* is first provided *medical services* within one year immediately following the date of the accident; and

b. such *medical expenses* are for *medical services* that are provided within three years immediately following the date of the accident; and

2. funeral expenses incurred for an *insured* who dies within three years immediately following the date of a motor vehicle accident if the death is a direct result of *bodily injury* sustained in such accident.

**Determining Medical Expenses**

*We* have the right to:

1. obtain and use:

a. utilization reviews;

b. peer reviews; and

c. medical bill reviews

to determine if the incurred charges are *medical expenses*;

2. use a medical examination of the *insured* to determine if:

a. the *bodily injury* was caused by a motor vehicle accident; and

b. the expenses incurred are *medical expenses*; and

3. enter into a contract with a third party that has an agreement with the *insured's* healthcare provider to charge fees as determined by that agreement.

**Arbitration**

1. If there is a disagreement as to whether incurred charges are *medical expenses*, then the disagreement will be resolved by arbitration upon written request of the *insured* or *us*.

2. The arbitration will take place in the county in which the *insured* resides, unless the parties agree to another location.

3. The *insured* and *we* will each select a competent arbitrator. These two arbitrators will select a third competent arbitrator. If they are unable to agree on the third arbitrator within 30 days,

then either the *insured* or *we* may petition a court that has jurisdiction to select the third arbitrator.

Each party will pay the cost of its own arbitrator, attorneys, and expert witnesses, as well as any other expenses incurred by that party. Both parties will share equally the cost of the third arbitrator.

3. The arbitrators shall only decide whether incurred charges are *medical expenses*. Arbitrators shall have no authority to decide any other questions of fact, decide any questions of law, or conduct arbitration on a class-wide or class-representative basis.

4. A written decision that is both agreed upon by and signed by any two arbitrators, and that also contains an explanation of how they arrived at their decision, will be binding on:

a. *us*;

b. the *insured*;

c. any assignee of the *insured*; and

d. any *person* or organization with whom the *insured* expressly or impliedly contracts for *medical services*.

5. Subject to 1., 2., 3., and 4. above, state court rules governing procedure and admission of evidence will be used.

6. *We* do not waive any of *our* rights by submitting to arbitration.

**Limit**

1. The Medical Payments Coverage limit is shown on the Declarations Page under "Medical Payments Coverage Limit – Each Person". This limit is the most *we* will pay for the *medical expenses* and funeral expenses combined, incurred by or on behalf of any one *insured* as a result of any one accident, regardless of the number of:

a. *insureds*;

b. claims made;

c. vehicles insured; or

d. vehicles involved in the accident.

2. Subject to the limit shown on the Declarations Page, the most *we* will pay for funeral expenses incurred for any one *insured* is $3,000.

**Nonduplication**

*We* will not pay any *medical expenses* or funeral expenses under Medical Payments Coverage that have already been paid:

1. as damages under Liability Coverage or Uninsured Motor Vehicle Coverage of any policy issued by the *State Farm Companies* to *you* or any *resident relative*; or

2. by or on behalf of a party who is legally liable for the *insured's bodily injury*.

**Exclusions**

THERE IS NO COVERAGE FOR AN *INSURED*:

1. WHO IS STRUCK AS A *PEDESTRIAN* BY A MOTOR VEHICLE *OWNED BY* THAT *INSURED* OR *YOU*, IF IT IS NOT *YOUR CAR* OR A *NEWLY ACQUIRED CAR*;

2. IF ANY WORKERS' COMPENSATION LAW OR ANY SIMILAR LAW APPLIES TO THAT *INSURED'S BODILY INJURY*;

3. WHO IS *OCCUPYING* A VEHICLE WHILE IT IS RENTED TO OR LEASED TO OTHERS BY AN *INSURED*;

4. WHO IS *OCCUPYING* A VEHICLE WHILE IT IS BEING USED TO CARRY *PERSONS* FOR A CHARGE. This exclusion does not apply to:

a. the use of a *private passenger car* on a share-the-expense basis; or

b. an *insured* while *occupying* a *non-owned car* as a passenger;

5. WHILE MAINTAINING OR USING A VEHICLE IN CONNECTION WITH THAT *INSURED'S* EMPLOYMENT IN OR ENGAGEMENT OF ANY KIND IN A *CAR BUSINESS*. This exclusion does not apply to:

a. *you*;

b. any *resident relative*; or

c. any agent, employee, or business partner of a. or b. above

while maintaining or using *your car*, a *newly acquired car*, a *temporary substitute car*, or a *trailer owned by you*;

6. WHILE THAT *INSURED* IS VALET PARKING A VEHICLE;

7. WHILE MAINTAINING OR USING A *NON-OWNED CAR* IN ANY BUSINESS OR OCCUPATION OTHER THAN A *CAR BUSINESS* OR VALET PARKING. This exclusion does not apply to the maintenance or use of a *private passenger car*;

8. WHO IS EITHER *OCCUPYING* OR STRUCK AS A *PEDESTRIAN* BY A VEHICLE THAT IS LOCATED FOR USE AS A DWELLING OR OTHER PREMISES;

9. WHO IS STRUCK AS A *PEDESTRIAN* BY A VEHICLE THAT:

a. IS DESIGNED FOR USE PRIMARILY OFF PUBLIC ROADS WHILE OFF PUBLIC ROADS; OR

b. RUNS ON RAILS OR CRAWLER-TREADS.

10. WHOSE *BODILY INJURY* RESULTS FROM WAR OF ANY KIND;

11. WHOSE *BODILY INJURY* RESULTS FROM:

   a. NUCLEAR REACTION;

   b. RADIATION OR RADIOACTIVE CONTAMINATION FROM ANY SOURCE; OR

   c. THE ACCIDENTAL OR INTENTIONAL DETONATION OF, OR RELEASE OF RADIATION FROM, ANY NUCLEAR OR RADIOACTIVE DEVICE;

12. WHOSE *BODILY INJURY* RESULTS FROM THE DISCHARGE OF A FIREARM;

13. WHOSE *BODILY INJURY* RESULTS FROM EXPOSURE TO FUNGI;

14. WHILE *YOUR CAR* OR A *NEWLY ACQUIRED CAR* IS SUBJECT TO ANY LIEN OR SALES AGREEMENT NOT SHOWN ON THE DECLARATIONS PAGE. This does not apply to *you*; OR

15. WHO IS *OCCUPYING* A VEHICLE WHILE IT IS:

   a. BEING PREPARED FOR, USED IN PRACTICE FOR, OR OPERATED IN ANY RACING CONTEST, SPEED CONTEST, HILL-CLIMBING CONTEST, JUMPING CONTEST, OR ANY SIMILAR CONTEST; OR

   b. ON A TRACK DESIGNED PRIMARILY FOR RACING OR HIGH-SPEED DRIVING. This exclusion (15.b.) does not apply if the vehicle is being used in connection with an activity other than racing, high-speed driving, or any type of competitive driving.

### If Other Medical Payments Coverage or Similar Vehicle Insurance Applies

1. An *insured* shall not recover for the same *medical expenses* or funeral expenses under both this coverage and other medical payments coverage or similar vehicle insurance.

2. If Medical Payments Coverage provided by this policy and one or more other vehicle policies issued to *you* or any *resident relative* by the *State Farm Companies* apply to the same *bodily injury*, then:

   a. the Medical Payments Coverage limits of such policies shall not be added together to determine the most that may be paid; and

   b. the maximum amount that may be paid from all such policies combined is the single highest applicable limit provided by any one of the policies. *We* may choose one or more policies from which to make payment.

3. The Medical Payments Coverage provided by this policy applies as primary coverage for an *insured* who sustains *bodily injury* while occupying *your car* or a *trailer* attached to it.

   a. If:

     (1) this is the only vehicle policy issued to *you* or any *resident relative* by the *State Farm Companies* that provides Medical Payments Coverage or other similar vehicle insurance which applies to the accident as primary coverage; and

     (2) medical payments coverage or other similar vehicle insurance provided by one or more sources other than the *State Farm Companies* also applies as primary coverage for the same accident,

   then *we* will pay the proportion of *medical expenses* and funeral expenses payable as primary that *our* applicable limit bears to the sum of *our* applicable limit and the limits of all other medical payments coverage or similar vehicle insurance that apply as primary coverage.

   b. If:

     (1) more than one vehicle policy issued to *you* or any *resident relative* by the *State Farm Companies* provides Medical Payments Coverage or other similar vehicle insurance which applies to the accident as primary coverage; and

     (2) medical payments coverage or other similar vehicle insurance provided by one or more sources other than the *State Farm Companies* also applies as primary coverage for the same accident,

   then the *State Farm Companies* will pay the proportion of *medical expenses* and funeral expenses payable as primary that the maximum amount that may be paid by the *State Farm Companies* as determined in 2. above bears to the sum of such amount and the limits of all other medical payments coverage or similar vehicle insurance that apply as primary coverage.

4. Except as provided in 3. above, the Medical Payments Coverage provided by this policy applies as excess coverage.

   a. If:

     (1) this is the only vehicle policy issued to *you* or any *resident relative* by the *State Farm Companies* that provides Medical Payments Coverage or other similar vehicle insurance which applies to the accident as excess coverage; and

(2) medical payments coverage or other similar vehicle insurance provided by one or more sources other than the **State Farm Companies** also applies as excess coverage for the same accident;

then **we** will pay the proportion of **medical expenses** and funeral expenses payable as excess that **our** applicable limit bears to the sum of **our** applicable limit and the limits of all other medical payments coverage or similar vehicle insurance that apply as excess coverage.

b. If:

(1) more than one vehicle policy issued to **you** or any **resident relative** by the **State Farm Companies** provides Medical Payments Coverage or other similar vehicle insurance which applies to the accident as excess coverage; and

(2) medical payments coverage or other similar vehicle insurance provided by one or more sources other than the **State Farm Companies** also applies as excess coverage for the same accident;

then the **State Farm Companies** will pay the proportion of **medical expenses** and funeral expenses payable as excess that the maximum amount that may be paid by the **State Farm Companies** as determined in 2. above bears to the sum of such amount and the limits of all other medical payments coverage or similar vehicle insurance that apply as excess coverage.

**Payment of Medical Expenses**

**We** may withhold payment of **medical expenses** until **we** receive a properly executed reimbursement and subrogation agreement.

**Our Payment Options**

**We** may, at **our** option, make payment to one or more of the following:

1. The **insured**;

2. The **insured**'s surviving spouse or the deceased **person's** estate;

3. A parent or guardian of the **insured**, if the **insured** is a minor or an incompetent **person**;

4. A **person** authorized by law to receive such payment; or

5. Any **person** or organization that provides the **medical services** or funeral services.

# UNINSURED MOTOR VEHICLE COVERAGE

This policy provides Uninsured Motor Vehicle Coverage if "U" is shown under "SYMBOLS" on the Declarations Page.

**Additional Definitions**

**Insured** means:

1. **you**;

2. **resident relatives**;

3. any other **person** who is not insured for uninsured motor vehicle coverage under another vehicle policy while **occupying**:

a. **your car**;

b. a **newly acquired car**; or

c. a **temporary substitute car**.

Such vehicle must be used within the scope of **your** consent. Such other **person occupying** a vehicle used to carry **persons** for a charge is not an **insured**; and

4. any **person** entitled to recover compensatory damages as a result of **bodily injury** to an **insured** as defined in 1., 2., or 3. above.

**Motor Vehicle** means:

1. a self-propelled vehicle designed for use and principally used on public roads, including an automobile, truck, semi-tractor, motorcycle, and bus; and

2. a motor home, provided the motor home is not stationary land, is not being used as a temporary or permanent residence or office.

**Motor vehicle** does not include a trolley, streetcar, trailer, railroad engine, railroad car, motorized bicycle, golf cart, off-road, recreational vehicle, snowmobile, fork lift, aircraft, watercraft, construction equipment, farm tractor or other vehicle designed and principally used for agricultural purposes, mobile home, vehicle traveling on treads or rails, or any similar vehicle.

**Uninsured Motorist** means the owner or operator of:

1. a **motor vehicle** whose ownership, operation, maintenance and use of that **motor vehicle** is:

a. not insured or bonded for bodily injury liability at the time of the accident; or

b. insured or bonded for bodily injury liability at the time of the accident; but:

   (1) the limits of liability are less than required by the financial responsibility act of the state where *your car* is mainly garaged; or

   (2) the limits of liability:

     (a) are less than the limits *you* carry for Uninsured Motor Vehicle Coverage under this policy; or

     (b) have been reduced by payments to *persons* other than *an insured* to an amount less than the limits *you* carry for Uninsured Motor Vehicle Coverage under this policy;

   (3) the insuring company denies coverage or is or becomes insolvent;

   (4) the owner or operator has diplomatic immunity; or

   (5) the owner or operator has immunity under Chapter 2744 of the Ohio Revised Code; or

2. a *motor vehicle*, who remains unidentified but independent corroborative evidence exists to prove that the *bodily injury* was proximately caused by the intentional or negligent actions in the operation of a *motor vehicle* by the unidentified operator of the *motor vehicle*. The testimony of an *insured* seeking recovery shall not constitute independent corroborative evidence unless the testimony is supported by additional evidence.

An *uninsured motorist* does not include an owner or operator of a *motor vehicle*:

1. that has applicable liability coverage in the policy under which the uninsured motor vehicle coverage is provided;

2. that is *owned by* or operated by a self-insurer under any motor vehicle financial responsibility law, a motor carrier law, or any similar law; or

3. that is *owned by* any government or any of its political subdivisions or agencies, unless the operator of the *motor vehicle* has an immunity under Chapter 2744 of the Ohio Revised Code.

**Insuring Agreement**

1. *We* will pay compensatory damages for *bodily injury* an *insured* is legally entitled to recover from an *uninsured motorist*. The *bodily injury* must be:

a. sustained by an *insured*; and

b. caused by an accident arising out of the operation, maintenance, or use of a *motor vehicle* by an *uninsured motorist*.

2. *We* will pay only if (C.)

a. the limits of all bodily injury liability bonds, policies, and self-insurance plans that apply have been used up by payment of judgments; or

b. the insurer of the *uninsured motorist*, if any, commits to pay any amount in settlement for damages arising out of and resulting from *bodily injury* to the *insured* and the *insured* informs *us* of the settlement offer in compliance with the Consent to Settlement provision.

**Consent to Settlement**

The *insured* must inform *us* of a settlement offer, if any, proposed by or on behalf of the owner or driver of the *uninsured motor vehicle*, and the *insured* must request *our* written consent to accept such settlement offer.

If *we*:

1. consent in writing, then the *insured* may accept such settlement offer.

2. inform the *insured* in writing that *we* do not consent, then the *insured* may not accept such settlement offer and:

a. *we* will make payment to the *insured* in an amount equal to such settlement offer. This payment is considered a payment made by or on behalf of the owner or driver of the *uninsured motor vehicle*; and

b. any recovery from or on behalf of the owner or driver of the *uninsured motor vehicle* shall first be used to repay *us*.

**Deciding Fault and Amount**

1. a. The *insured* and *we* must agree to the answers to the following two questions:

   (1) Is the *insured* legally entitled to recover compensatory damages from the *uninsured motorist*?

   (2) If the *insured* and *we* agree that the answer to 1.a.(1) above, is 'yes,' then what is the amount of the compensatory damages that the *insured* is legally entitled to recover from the *uninsured motorist*?

b. If there is no agreement on the answer to either question in 1.a. above, then the *insured* shall:

   (1) file a lawsuit, in the proper court against:

     (a) *us*; and

     (b) the *uninsured motorist* unless *we* have consented to a settlement

offer proposed by or on behalf of the *uninsured motorist*;

(2) upon filing the lawsuit, immediately give *us* copies of the summons and complaints filed by the *insured* in that action;

(3) consent to a jury trial if requested by *us*;

(4) agree that *we* may contest the issues of liability and the amount of damages; and

(5) secure a judgment in that action. The judgment must be the final result of an actual trial and any appeals, if any appeals are taken.

2. *We* are not bound by any:

a. judgment obtained without *our* written consent; and

b. default judgment against any *person* or organization other than *us*.

3. Regardless of the amount of any award, including any judgment or default judgment, *we* are not obligated to pay any amount in excess of the available limits under this coverage of this policy.

**Limits**

1. The Uninsured Motor Vehicle Coverage limits are shown on the Declarations Page under "Uninsured Motor Vehicle Coverage – Bodily Injury Limits – Each Person, Each Accident".

2. The limit shown under "Each Person" is the most *we* will pay for all damages arising out of and resulting from *bodily injury* to any one *insured* injured in any one accident, including all damages sustained by other *insureds* arising out of and resulting from that *bodily injury*. The limit shown under "Each Accident" is the most *we* will pay, subject to the limit for "Each Person", for all damages arising out of and resulting from *bodily injury* to two or more *insureds* injured in the same accident.

3. The most *we* will pay for all damages resulting from *bodily injury* to one *insured* injured in any one accident, including all damages sustained by other *insureds* arising out of and resulting from that *bodily injury*, is the lesser of:

a. the limit shown under "Each Person" reduced by the sum of:

(1) all amounts from all liability bonds, liability insurance policies, and self-insurance that are available for payment by or on behalf of any *person* or organization who is or may be held legally liable for the *bodily injury*; and

(2) all payments individually made by or on behalf of any *person* or organization who is or may be held legally liable for the *bodily injury*; or

b. the amount of all compensatory damages arising out of and resulting from that *bodily injury* reduced by the sum of:

(1) all amounts from all liability bonds, liability insurance policies, and self-insurance that are available for payment by or on behalf of any *person* or organization who is or may be held legally liable for the *bodily injury*; and

(2) all payments individually made by or on behalf of any *person* or organization who is or may be held legally liable for the *bodily injury*.

4. Subject to 3. above, the most *we* will pay for all damages resulting from *bodily injury* to two or more *insureds* injured in the same accident is the limit shown under "Each Accident" reduced by the sum of:

a. all amounts from all liability bonds, liability insurance policies, and self-insurance that are available for payment by or on behalf of any *person* or organization who is or may be held legally liable for the *bodily injuries*; and

b. all payments individually made by or on behalf of any *person* or organization who is or may be held legally liable for the *bodily injuries*.

5. These Uninsured Motor Vehicle Coverage limits are the most *we* will pay regardless of the number of:

a. *insureds*;

b. claims made;

c. vehicles insured; or

d. vehicles involved in the accident.

**Nonduplication**

*We* will not pay under Uninsured Motor Vehicle Coverage any damages:

1. that have already been paid to or for the *insured*:

a. by or on behalf of any *person* or organization who is or may be held legally liable for the *bodily injury* to the *insured*; or

b. for *bodily injury* under Liability Coverage of any policy issued by the *State Farm Companies* to *you* or any *resident relative*; or

2. paid or payable under:

   a. Medical Payments Coverage of this policy; or

   b. the medical payments coverage, no-fault coverage, personal injury protection coverage or similar coverage of any other motor vehicle policy.

**Exclusions**

THERE IS NO COVERAGE:

1. FOR AN *INSURED* IF THAT *INSURED* OR HIS OR HER PERSONAL REPRESENTATIVE, WITHOUT *OUR* WRITTEN CONSENT, SETTLES WITH ANY *PERSON* OR ORGANIZATION WHO IS OR MAY BE HELD LEGALLY LIABLE FOR THE *BODILY INJURY*.

2. FOR DAMAGES ARISING OUT OF AND RESULTING FROM *BODILY INJURY* TO ANY *INSURED* WHILE ANY *INSURED* IS OPERATING OR *OCCUPYING* A MOTOR VEHICLE *OWNED BY*, FURNISHED TO, OR AVAILABLE FOR THE REGULAR USE OF *YOU* OR ANY *RESIDENT RELATIVE* IF THAT MOTOR VEHICLE IS NOT *YOUR CAR*, A *NEWLY ACQUIRED CAR*, OR A *TEMPORARY SUBSTITUTE CAR*.

  This exclusion does not apply to *you* while *occupying* a *motor vehicle owned by* a *resident relative* if such vehicle also is not *owned by* any *person* included in the definition of *you*;

3. FOR DAMAGES ARISING OUT OF AND RESULTING FROM *BODILY INJURY* TO ANY *INSURED* WHILE ANY *INSURED* IS OPERATING OR *OCCUPYING* A MOTOR VEHICLE WITHOUT A REASONABLE BELIEF THAT SUCH *INSURED* IS ENTITLED TO DO SO, PROVIDED THAT UNDER NO CIRCUMSTANCES WILL AN *INSURED* WHOSE LICENSE HAS BEEN SUSPENDED, REVOKED, OR NEVER ISSUED, BE HELD TO HAVE A REASONABLE BELIEF THAT SUCH *INSURED* IS ENTITLED TO OPERATE A MOTOR VEHICLE;

4. FOR DAMAGES ARISING OUT OF AND RESULTING FROM *BODILY INJURY* TO ANY *INSURED* WHEN THE *BODILY INJURY* IS CAUSED BY A MOTOR VEHICLE OPERATED BY ANY *PERSON* WHO IS SPECIFICALLY EXCLUDED FROM THE COVERAGE PROVIDED BY THE LIABILITY COVERAGE OF THIS POLICY.

5. WHEN THE *PERSON* WHO ACTUALLY SUSTAINS THE *BODILY INJURY* IS NOT AN *INSURED* UNDER THIS POLICY;

6. FOR AN *INSURED* WHOSE *BODILY INJURY* RESULTS FROM THE DISCHARGE OF A FIREARM;

7. TO THE EXTENT IT BENEFITS ANY GOVERNMENT OR ANY OF ITS POLITICAL SUBDIVISIONS OR AGENCIES;

8. FOR AN *INSURED* WHOSE *BODILY INJURY* RESULTS FROM:

   a. NUCLEAR REACTION;

   b. RADIATION OR RADIOACTIVE CONTAMINATION FROM ANY SOURCE; OR

   c. THE ACCIDENTAL OR INTENTIONAL DETONATION OF, OR RELEASE OF RADIATION FROM, ANY NUCLEAR OR RADIOACTIVE DEVICE;

9. FOR PUNITIVE OR EXEMPLARY DAMAGES, OR ATTORNEY FEES ASSOCIATED WITH THESE DAMAGES; OR

10. FOR ANY ORDER OF RESTITUTION ISSUED BY A COURT IN A CRIMINAL PROCEEDING OR EQUITABLE ACTION.

**If Other Uninsured Motor Vehicle Coverage Applies**

1. Any and all stacking of uninsured motor vehicle coverage is precluded.

2. **If Other Policies Issued By Us To You or Any Resident Relative Apply**

  If two or more *motor vehicle* liability policies issued by *us* to *you* or any *resident relative* providing Uninsured Motor Vehicle Coverage apply to the same accident, then the maximum amount that may be paid from all such policies combined is the single highest applicable limit provided by any one of the policies. *We* may choose one or more policies from which to make payment.

3. **If Any Other Policies Apply**

   a. If the Uninsured Motor Vehicle Coverage provided by this policy and the uninsured motor vehicle coverage provided by any other policy apply to the same, *bodily injury*, then this coverage is excess to such other uninsured motor vehicle coverage, but only in the amount by which it exceeds such other coverage.

   b. If coverage under more than one policy applies as excess, then:

     (1) the maximum amount payable may not exceed the difference between the uninsured motor vehicle coverage limit of the policy that applies as primary and the highest applicable uninsured motor vehicle coverage limit of any

one of the *uninsured motor vehicle* coverages that applies as excess; and

(2) *we* are liable only for *our* share. *Our* share is that percent of the damages that *our* applicable limit as determined in item 2. above bears to the sum of *our* applicable limit and the limits of all other uninsured motor vehicle coverages that apply as excess to the accident.

## UNINSURED MOTOR VEHICLE PROPERTY DAMAGE COVERAGE

This policy provides Uninsured Motor Vehicle Property Damage Coverage if "U1" is shown under "SYMBOLS" on the Declarations Page.

**Additional Definitions**

*Property Damage* means damage to, or the destruction of, *your car* or a *newly acquired car* and does not include loss of use of such vehicle.

*Uninsured Motor Vehicle* means a land motor vehicle, which strikes *your car* or a *newly acquired car*, and:

1. the ownership, maintenance, or use of which is:
   a. not insured or bonded for property damage liability at the time of the accident; or
   b. insured or bonded for property damage liability at the time of the accident, but
      (1) the limit of liability for property damage is less than required by the financial responsibility act of Ohio; or
      (2) the insuring company:
         (a) denies that its policy provides liability coverage for property damage that results from the accident; or
         (b) is or becomes insolvent; and
2. the owner or operator of such *uninsured motor vehicle* must be identified.

*Uninsured Motor Vehicle* does not include a land motor vehicle:

1. whose ownership, maintenance, or use is provided Liability Coverage by this policy;
2. *owned by*, rented to, or furnished or available for the regular use of *you*;
3. *owned by*, rented to, or operated by a self-insurer under any motor vehicle financial responsibility law, any motor carrier law, or any similar law;

**Our Payment Options**

*We* may, at *our* option, make payment to one or more of the following:

1. The *insured*;
2. The *insured*'s surviving spouse;
3. A parent or guardian of the *insured*, if the *insured* is a minor or an incompetent *person*; or
4. A *person* authorized by law to receive such payment.

4. *owned by*, or rented to any government or any of its political subdivisions or agencies;
5. designed for use primarily off public roads except while on public roads; or
6. while located for use as a dwelling or other premises.

**Insuring Agreement**

*We* will pay compensatory damages for *property damage* you are legally entitled to recover from the owner or driver of an *uninsured motor vehicle*. The *property damage* must be caused by accident arising out of the operation, maintenance, or use of an *uninsured motor vehicle*.

**Limits and Settlement**

*We* have the right to choose to settle with *you* for the *property damage* in one of the following ways:

a. Pay the cost to repair the damaged property minus the $250 deductible.
   (1) *We* have the right to choose one of the following to determine the cost to repair the damaged property:
      (a) The cost agreed to by both *you* and *us*;
      (b) A bid or repair estimate approved by *us*; or
      (c) A repair estimate that is written based upon or adjusted to:
         (i) the prevailing competitive price;
         (ii) the lower of paintless dent repair pricing established by an agreement *we* have with a third party or the paintless dent repair price that is competitive in the market; or

17

(iii) a combination of (i) and (ii) above.

The prevailing competitive price means prices charged by a majority of the repair market in the area where the damaged property is to be repaired as determined by a survey made by *us*. If asked, *we* will identify some facilities that will perform the repairs at the prevailing competitive price. The estimate will include parts sufficient to restore the damaged property to its pre-loss condition.

(2) *You* agree with *us* that the repair estimate may include new, used, recycled, and reconditioned parts. Any of these parts may be either original equipment manufacturer parts or non-original equipment manufacturer parts.

(3) *You* also agree that replacement glass need not have any insignia, logo, trademark, etching, or other marking that was on the replaced glass except for etching of the vehicle identification number.

(4) If the repair or replacement of a part results in betterment of that part, then *you* must pay for the amount of the betterment.

(5) If *you* and *we* agree, then windshield glass will be repaired instead of replaced.

Pay the actual cash value of the damaged property minus a deductible of $250. The damaged property must be given to *us* in exchange for *our* payment, unless *we* agree that *you* may keep it. If *you* keep the damaged property, then *our* payment will be reduced by the value of the damaged property after the *loss*.

2. The most *we* will pay for *property damage* is the lesser of:

   a. the cost to repair the damaged property minus the $250 deductible;

   b. the actual cash value of the damaged property minus the $250 deductible; or

   c. $7,500.

3. These Uninsured Motor Vehicle Property Damage limits are the most *we* will pay regardless of the number of:

   a. *insureds*;

   b. claims made;

c. vehicles insured; or

d. vehicles involved in the accident.

**Nonduplication**

*We* will not pay under Uninsured Motor Vehicle Property Damage Coverage any damages that are payable or have already been paid to or for *you*:

1. by or on behalf of any *person* or organization who is or may be held legally liable for the *property damage*;

2. under any policy of vehicle liability insurance; or

3. under other property insurance or physical damage insurance.

**Exclusions**

THERE IS NO COVERAGE:

1. IF *YOU* OR *YOUR* PERSONAL REPRESENTATIVE, WITHOUT *OUR* WRITTEN CONSENT, SETTLES WITH ANY *PERSON* OR ORGANIZATION WHO IS OR MAY BE HELD LEGALLY LIABLE FOR THE *BODILY INJURY*;

2. THERE IS NO COVERAGE FOR THE FIRST $250 OF *PROPERTY DAMAGE* RESULTING FROM EACH ACCIDENT; OR

3. TO THE EXTENT IT BENEFITS:

   a. ANY GOVERNMENT OR ANY OF ITS POLITICAL SUBDIVISIONS OR AGENCIES; OR

   b. ANY INSURER OF PROPERTY.

**If Other Uninsured Motor Vehicle Property Damage Coverage Applies**

1. Any and all stacking of uninsured motor vehicle coverage is precluded.

2. **If Other Policies Issued By Us To You or Any Resident Relative Apply**

   If two or more *motor vehicle* liability policies issued by *us* to *you* or any *resident relative* providing Uninsured Motor Vehicle Property Damage Coverage apply to the same accident, then the maximum amount that may be paid from all such policies combined is the single highest applicable limit provided by any one of the policies. *We* may choose one or more policies from which to make payment.

3. **If Any Other Policies Apply**

   If the Uninsured Motor Vehicle Property Damage Coverage provided by this policy and the uninsured motor vehicle property

18

damage coverage provided by any other policy apply to the same *property damage*, then this coverage is excess to such other uninsured motor vehicle property damage coverage; but only in the amount by which it exceeds such other coverage.

b. If coverage under more than one policy applies as excess, then:

(1) the maximum amount payable may not exceed the difference between the uninsured motor vehicle coverage limit of the policy that applies as primary and the highest applicable uninsured motor vehicle coverage limit of any one of the uninsured motor vehicle coverages that applies as excess; and

## PHYSICAL DAMAGE COVERAGES

The physical damage coverages are Comprehensive Coverage, Collision Coverage, Emergency Road Service Coverage, and Car Rental and Travel Expenses Coverage.

This policy provides:

1. Comprehensive Coverage if "D";
2. Collision Coverage if "G";
3. Emergency Road Service Coverage if "H";
4. Car Rental and Travel Expenses Coverage if "R1" is shown under "SYMBOLS" on the Declarations Page.

If a deductible applies to Comprehensive Coverage, then it is shown on the Declarations Page. The deductible that applies to Collision Coverage is shown on the Declarations Page.

**Additional Definitions**

*Covered Vehicle* means:

1. *your car;*
2. a *newly acquired car;*
3. a *temporary substitute car;*
4. a camper that is designed to be mounted on a pickup truck and shown on the Declarations Page;
5. a *non-owned car* while it is:

   a. being driven by an *insured*; or
   b. in the custody of an *insured* if at the time of the *loss* it is:

      (1) not being driven; or

(2) *we* are liable only for *our* share. *Our* share is that percent of the damages that *our* applicable limit; as determined in item 2. above, bears to the sum of *our* applicable limit and the limits of all other uninsured motor vehicle property damage coverages that apply as excess to the accident.

## Our Payment Options

*We* may, at *our* option, make payment to one or more of the following:

1. *You;*
2. The repairer;
3. A creditor shown on the Declarations Page, to the extent of its interest; or
4. Any *person* or organization authorized by law to receive such payment.

(2) being driven by a *person* other than an *insured* and being *occupied* by an *insured;*

6. a *non-owned trailer* while it is being used by an *insured*; and
7. a *non-owned camper* while it is being used by an *insured*

including its parts and its equipment that are common to the use of the vehicle as a vehicle. However, parts and equipment of *trailers* and campers must be securely fixed as a permanent part of the *trailer* or camper.

*Daily Rental Charge* means the sum of:

1. the daily rental rate;
2. mileage charges; and
3. related taxes.

*Insured* means *you* and *resident relatives.*

*Loss* means:

1. direct, sudden, and accidental damage to; or
2. total or partial theft of;

a *covered vehicle*. *Loss* does not include any reduction in the value of any *covered vehicle* after it has been repaired, as compared to its value before it was damaged.

*Loss Caused By Collision* means a *loss* caused by:

1. a *covered vehicle* hitting or being hit by another vehicle or another object; or
2. the overturning of a *covered vehicle.*

19

Any *loss* caused by missiles, falling objects, windstorm, hail, fire, explosion, earthquake, water, flood, total or partial theft, malicious mischief, vandalism, riot, civil commotion, or hitting or being hit by a bird or an animal is not a *Loss Caused By Collision*.

*Non-Owned Camper* means a camper designed to be mounted on a pickup truck that is in the lawful possession of an *insured* and that neither:

1. is *owned by*
   a. an *insured*;
   b. any other *person* who resides primarily in *your* household; or
   c. an employer of any *person* described in a. or b. above; nor

2. has been used by, rented by, or in the possession of an *insured* during any part of each of the 31 or more consecutive days immediately prior to the date of the *loss*.

*Non-Owned Trailer* means a *trailer* that is in the lawful possession of an *insured* and that neither:

1. is *owned by*
   a. an *insured*;
   b. any other *person* who resides primarily in *your* household; or
   c. an employer of any *person* described in a. or b. above; nor

2. has been used by, rented by, or in the possession of an *insured* during any part of each of the 31 or more consecutive days immediately prior to the date of the *loss*.

**Insuring Agreements**

1. **Comprehensive Coverage**

   *We* will pay:
   a. for *loss*, except *loss caused by collision*, to a *covered vehicle*; and
   b. transportation expenses incurred by an *insured* as a result of the total theft of *your car* or a *newly acquired car*. These transportation expenses are payable:
      (1) during the period that:
         (a) starts on the date *you* report the theft to *us*; and
         (b) ends on the earliest of:
            (i) the date the vehicle is returned to *your* possession in a drivable condition;
            (ii) the date *we* offer to pay for the *loss* if the vehicle has not yet been recovered; or

            (iii) the date *we* offer to pay the *loss* if the vehicle is covered, but is a total loss determined by *us*; and
      (2) during the period that:
         (a) starts on the date the vehicle left at a repair facility if the stolen vehicle is recovered, returned to *your* possession in a drivable condition and has unrepaired damage that resulted from the total theft; and
         (b) ends on the date the vehicle is repaired.

      These transportation expenses must be reported to *us* before *we* will pay such incurred expenses.

2. **Collision Coverage**

   *We* will pay for *loss caused by collision* to a *covered vehicle*.

3. **Emergency Road Service Coverage**

   *We* will pay the fair cost incurred by an *insured* for:
   a. up to one hour of labor to repair a *covered vehicle* at the place of its breakdown;
   b. towing to the nearest repair facility where necessary repairs can be made if a *covered vehicle* is not drivable;
   c. towing a *covered vehicle* out of a location where it is stuck if the vehicle is on or immediately next to a public road;
   d. delivery of gas, oil, battery, or tire necessary to return a *covered vehicle* to driving condition. *We* do not pay the cost of the gas, oil, battery, or tire; and
   e. up to one hour of labor for locksmith services to unlock a *covered vehicle* if its key is lost, stolen, or locked inside the vehicle.

4. **Car Rental and Travel Expenses Coverage**
   a. **Car Rental Expense**

      *We* will pay the *daily rental charge* incurred when *you* rent a *car* from a car business while *your car* or a *newly acquired car* is:
      (1) not drivable; or
      (2) being repaired
      as a result of a *loss* which would be payable under Comprehensive Coverage or Collision Coverage.

*We* will pay this *daily rental charge* incurred during a period that:

(1) starts on the date:

   (a) the vehicle is not drivable as a result of the *loss*; or

   (b) the vehicle is left at a repair facility if the vehicle is drivable; and

(2) ends on the earliest of:

   (a) the date the vehicle has been repaired or replaced;

   (b) the date *we* offer to pay for the *loss* if the vehicle is repairable but *you* choose to delay repairs; or

   (c) five days after *we* offer to pay for the *loss* if the vehicle is:

     (i) a total loss as determined by *us*; or

     (ii) stolen and not recovered.

The amount of any such *daily rental charge* incurred by *you* must be reported to *us* before *we* will pay such amount.

**b. Travel Expenses**

*We* will pay expenses for commercial transportation, lodging, and meals if *your car* or a *newly acquired car* is not drivable as a result of a *loss* which would be payable under Comprehensive Coverage or Collision Coverage. The *loss* must occur more than 50 miles from *your* home. *We* will only pay these expenses if they are incurred by:

(1) an *insured* during the period that:

   (a) starts after the *loss* occurs; and

   (b) ends on the earlier of:

     (i) the *insured's* arrival at his or her destination or home if the vehicle is left behind for repairs; or

     (ii) the repair of the vehicle if the *insured* waits for repairs before continuing on to his or her destination or returning home; and

(2) *you*, or any *person you* choose, to travel to retrieve the vehicle and drive it to either the original destination or *your* home if the vehicle was left behind for repairs.

These expenses must be reported to *us* before *we* will pay such incurred expenses.

**Rental Car – Repayment of Deductible Expense**

*We* will pay the comprehensive coverage deductible or collision coverage deductible an *insured* is required to pay the owner of a *car* rented from a *car business*.

**Supplementary Payments – Comprehensive Coverage and Collision Coverage**

If the *covered vehicle* sustains *loss* for which *we* make a payment under Comprehensive Coverage or Collision Coverage, then *we* will pay reasonable expenses incurred to:

1. tow the *covered vehicle* immediately after the *loss*:

  a. for a reasonable distance from the location of the *loss* to any one repair facility chosen by an *insured* or the owner of the *covered vehicle* if the *covered vehicle* is not drivable; or

  b. to any one repair facility or commercial storage facility, neither of which was chosen by an *insured* or the owner of the *covered vehicle*. *We* will also pay reasonable expenses incurred to tow the *covered vehicle* for a reasonable distance from this facility to any one repair facility chosen by an *insured* or the owner of the *covered vehicle*, if the *covered vehicle* is not drivable;

2. store the *covered vehicle*, if it is not drivable immediately after the *loss*, at:

  a. any one repair facility or commercial storage facility, neither of which was chosen by an *insured* or the owner of the *covered vehicle*; and

  b. any one repair facility chosen by the owner of the *covered vehicle*, and *we* determine such vehicle is a total loss.

If the owner of the *covered vehicle* consents, then *we* may move the *covered vehicle* at our expense to reduce storage costs. If the owner of the *covered vehicle* does not consent, then *we* will pay only the storage costs that would have resulted if *we* had moved the damaged *covered vehicle*; and

3. clean up debris from the *covered vehicle* at the location of the *loss*. The most *we* will pay to clean up the debris is $250 for any one *loss*.

**Limits and Loss Settlement – Comprehensive Coverage and Collision Coverage**

1. *We* have the right to choose to settle with *you* or the owner of the *covered vehicle* in one of the following ways:

  a. Pay the cost to repair the *covered vehicle* minus any applicable deductible;

(1) **We** have the right to choose one of the following to determine the cost to repair the **covered vehicle**:

   (a) The cost agreed to by both the owner of the **covered vehicle** and **us**;

   (b) A bid or repair estimate approved by **us**; or

   (c) A repair estimate that is written based upon or adjusted to:

      (i) the prevailing competitive price;

      (ii) the lower of paintless dent repair pricing established by an agreement **we** have with a third party or the paintless dent repair price that is competitive in the market; or

      (iii) a combination of (i) and (ii) above.

   The prevailing competitive price means prices charged by a majority of the repair market in the area where the **covered vehicle** is to be repaired as determined by a survey made by us. If asked, **we** will identify some facilities that will perform the repairs at the prevailing competitive price. The estimate will include parts sufficient to restore the **covered vehicle** to its pre-loss condition.

   **You** agree with **us** that the repair estimate may include new, used, recycled, and reconditioned parts. Any of these parts may be either original equipment manufacturer parts or non-original equipment manufacturer parts. **You** also agree that replacement glass need not have any insignia, logo, trademark, etching, or other marking that was on the replaced glass.

(2) The cost to repair the **covered vehicle** does not include any reduction in the value of the **covered vehicle** after it has been repaired, as compared to its value before it was damaged.

(3) If the repair or replacement of a part results in betterment of that part, then **you** or the owner of the **covered vehicle** must pay for the amount of the betterment.

(4) If **you** and **we** agree, then windshield glass will be repaired instead of replaced;

   b. Pay the actual cash value of the **covered vehicle** minus any applicable deductible.

(1) The owner of the **covered vehicle** and **we** must agree upon the actual cash value of the **covered vehicle**. If there is disagreement as to the actual cash value of the **covered vehicle**, then the disagreement will be resolved by appraisal upon written request of the owner or **us** using the following procedures:

   (a) The owner and **we** will each select a competent appraiser.

   (b) The two appraisers will select a third competent appraiser. If they are unable to agree on a third appraiser within 30 days, then either the owner or **we** may petition a court that has jurisdiction to select the third appraiser.

   (c) Each party will pay the cost of its own appraiser, attorneys, and expert witnesses, as well as any other expenses incurred by that party. Both parties will share equally the cost of the third appraiser.

   (d) The appraisers shall only determine the actual cash value of the **covered vehicle**. Appraisers shall have no authority to decide any other questions of fact, decide any questions of law, or conduct appraisal on a class-wide or class representative basis.

   (e) A written appraisal that is both agreed upon by and signed by any two appraisers, and that also contains an explanation of how they arrived at their appraisal, will be binding on the owner of the **covered vehicle** and **us**.

   (f) **We** do not waive any of **our** rights by submitting to an appraisal.

(2) The damaged **covered vehicle** must be given to **us** in exchange for **our** payment, unless **we** agree that the owner may keep it. If the owner keeps the **covered vehicle**, then **our** payment will be reduced by the value of the **covered vehicle** after the **loss**; or

c. Return the stolen **covered vehicle** to its owner and pay, as described in 1.a. above, for any direct, sudden, and accidental damage that resulted from the theft.

22

2. The most *we* will pay for transportation expenses under Comprehensive Coverage is $25 per day subject to an aggregate limit of $750 per *loss*.

3. The most *we* will pay for *loss* to a *non-owned trailer* or a *non-owned camper* is $2,500.

**Limits – Car Rental and Travel Expenses Coverage**

1. **Car Rental Expense**

   The limit for Car Rental Expense is shown on the Declarations Page under "Limit – Car Rental Expense – Each Day, Each Loss".

   a. The limit shown under "Each Day" is the most *we* will pay for the *daily rental charge*. If

      (1) a dollar amount is shown, then *we* will pay the *daily rental charge* up to that dollar amount, or

      (2) a percentage amount is shown, then *we* will pay that percentage of the *daily rental charge*.

   b. Subject to the "Each Day" limit, the limit shown under "Each Loss" is the most *we* will pay for Car Rental Expense incurred as a result of any one *loss*.

2. **Travel Expenses**

   The most *we* will pay for Travel Expenses incurred by all *insureds* as a result of any one *loss* is $500.

3. **Rental Car – Repayment of Deductible Expense**

   The most *we* will pay for Rental Car – Repayment of Deductible Expense incurred as a result of any one *loss* is $500.

**Nonduplication**

*We* will not pay for any *loss* or expense under the Physical Damage Coverages for which the *insured* or owner of the *covered vehicle* has already received payment from, or on behalf of, a party who is legally liable for the *loss* or expense provided by this policy, nor any such *loss* or expense more than once.

**Exclusions**

THERE IS NO COVERAGE FOR:

1. ANY *COVERED VEHICLE* THAT IS:
   a. INTENTIONALLY DAMAGED; OR
   b. STOLEN
   BY, OR AT THE DIRECTION OF, AN *INSURED*.

2. ANY *COVERED VEHICLE* WHILE IT IS RENTED TO OR LEASED TO OTHERS BY AN *INSURED*.

3. ANY *COVERED VEHICLE* WHILE IT IS USED TO CARRY *PERSONS* FOR A CHARGE. This exclusion does not apply to the use of a *private passenger car* on a share-the-expense basis.

4. ANY *COVERED VEHICLE* DUE TO:
   a. THEFT;
   b. CONVERSION;
   c. EMBEZZLEMENT; OR
   d. SECRETION
   BY AN *INSURED*, A *CONSIGNEE*, AN AGENT OF A CONSIGNEE, OR A *PERSON* WHO OBTAINS POSSESSION OF THE *COVERED VEHICLE* WITH THE PERMISSION OF A CONSIGNEE OR AGENT OF A CONSIGNEE.

5. *LOSS* TO *YOUR CAR* OR A *NEWLY ACQUIRED CAR* IF AN *INSURED* VOLUNTARILY RELINQUISHES POSSESSION OF THAT *CAR* TO A *PERSON* OR ORGANIZATION UNDER AN ACTUAL OR PRESUMED SALES AGREEMENT.

6. ANY *COVERED VEHICLE* TO THE EXTENT *OUR* PAYMENT WOULD BENEFIT ANY CARRIER OR OTHER BAILEE FOR HIRE THAT IS LIABLE FOR *LOSS* TO SUCH *COVERED VEHICLE*.

7. *LOSS* TO ANY *COVERED VEHICLE* DUE TO *FUNGI*. THIS APPLIES REGARDLESS OF WHETHER OR NOT THE *FUNGI* RESULT FROM A *LOSS* THAT IS PAYABLE UNDER ANY OF THE PHYSICAL DAMAGE COVERAGES. *WE* WILL ALSO NOT PAY FOR ANY TESTING OR REMEDIATION OF *FUNGI*, OR ANY ADDITIONAL COSTS REQUIRED TO REPAIR ANY *COVERED VEHICLE* THAT ARE DUE TO THE EXISTENCE OF *FUNGI*.

8. *LOSS* TO ANY *COVERED VEHICLE* THAT RESULTS FROM:
   a. NUCLEAR REACTION;
   b. RADIATION OR RADIOACTIVE CONTAMINATION FROM ANY SOURCE; OR
   c. THE ACCIDENTAL OR INTENTIONAL DETONATION OF, OR RELEASE OF RADIATION FROM, ANY NUCLEAR OR RADIOACTIVE DEVICE.

9. *LOSS* TO ANY *COVERED VEHICLE* THAT RESULTS FROM THE TAKING OF OR SEIZURE OF THAT *COVERED VEHICLE* BY ANY GOVERNMENTAL AUTHORITY.

10. *LOSS* TO ANY *COVERED VEHICLE* THAT RESULTS FROM WAR OF ANY KIND.

11. *YOUR CAR* WHILE SUBJECT TO ANY:
    a. LIEN AGREEMENT;

b. RENTAL AGREEMENT;
c. LEASE AGREEMENT; OR
d. SALES AGREEMENT;

NOT SHOWN ON THE DECLARATIONS PAGE;

12. ANY *NON-OWNED CAR* WHILE IT IS:

a. BEING MAINTAINED OR USED BY ANY *PERSON* WHILE THAT *PERSON* IS EMPLOYED IN OR ENGAGED IN ANY WAY IN A *CAR BUSINESS*; OR

b. USED IN ANY BUSINESS OR OCCUPATION OTHER THAN A *CAR BUSINESS*. This exclusion (12.b.) does not apply to a *private passenger car*.

13. ANY PART OR EQUIPMENT OF A *COVERED VEHICLE* IF THAT PART OR EQUIPMENT:

a. FAILS OR IS DEFECTIVE; OR

b. IS DAMAGED AS A DIRECT RESULT OF:

(1) WEAR AND TEAR;

(2) FREEZING; OR

(3) MECHANICAL, ELECTRICAL, OR ELECTRONIC BREAKDOWN OR MALFUNCTION

OF THAT PART OR EQUIPMENT.

This exclusion does not apply if the *loss* is the result of theft of the *covered vehicle*;

14. ANY PART OR EQUIPMENT:

a. THAT IS NOT LEGAL FOR USE IN OR ON THE *COVERED VEHICLE* IN THE JURISDICTION WHERE THE *COVERED VEHICLE* IS REGISTERED; OR

b. THE USE OF WHICH IS NOT LEGAL IN THE JURISDICTION WHERE THE *COVERED VEHICLE* IS REGISTERED BECAUSE OF HOW OR WHERE THAT PART OR EQUIPMENT IS INSTALLED IN OR ON THE *COVERED VEHICLE*.

However, if there is a legal version of the part or equipment that is necessary for the safe operation of the *covered vehicle*, then *we* will pay the cost that *we* would otherwise have paid to repair the vehicle with the legal version of the part or equipment. *We* will not pay any cost necessary to modify the vehicle for installation of the legal version of the part or equipment;

15. TIRES. This exclusion does not apply if:

a. *loss* is caused by missiles, falling objects, windstorm, hail, fire, explosion, earthquake, water, flood, total or partial theft, malicious mischief, vandalism, riot, civil

commotion; or hitting or being hit by a bird or an animal; or

b. *loss caused by collision* to another part of the *covered vehicle* causes loss to tires;

16. REMOVABLE PRODUCTS USED FOR STORAGE OF AUDIO, VIDEO, OR OTHER DATA, INCLUDING BUT NOT LIMITED TO TAPES, DISCS, AND MEMORY CARDS, NOR IS THERE COVERAGE FOR THE RECONSTRUCTION OF DATA CONTAINED THEREIN;

17. ANY EQUIPMENT USED TO DETECT OR INTERFERE WITH SPEED MEASURING DEVICES;

18. A CAMPER, INCLUDING ITS PARTS AND ITS EQUIPMENT, THAT IS:

a. DESIGNED TO BE MOUNTED ON A PICKUP TRUCK;

b. *OWNED BY* AN *INSURED*; AND

c. NOT SHOWN ON THE DECLARATIONS PAGE; OR

19. ANY *COVERED VEHICLE* WHILE IT IS:

a. BEING PREPARED FOR, USED IN PRACTICE FOR, OR OPERATED IN ANY RACING CONTEST, SPEED CONTEST, HILL-CLIMBING CONTEST, JUMPING CONTEST, OR ANY SIMILAR CONTEST; OR

b. ON A TRACK DESIGNED PRIMARILY FOR RACING OR HIGH-SPEED DRIVING. This exclusion (19.b.) does not apply if the vehicle is being used in connection with an activity other than racing, high-speed driving, or any type of competitive driving.

**If Other Physical Damage Coverage or Similar Coverage Applies**

1. If the same *loss* or expense is payable under more than one of the physical damage coverages provided by this policy, then only the one coverage that pays the most for that *loss* or expense applies.

2. If any of the physical damage coverages provided by this policy and one or more other policies issued to an *insured* by the *State Farm Companies* apply to the same *loss* or expense, then only one policy applies. *We* will select a policy that pays the most for the *loss* or expense.

3. The physical damage coverages provided by this policy apply as primary coverage for a *loss* to *your car*.

If similar coverage provided by one or more sources other than the *State Farm Companies*

24

also applies as primary coverage for the same *loss* or expense, then the *State Farm Companies* will pay the proportion of the *loss* or expense payable as primary that the maximum amount that may be paid by the *State Farm Companies* bears to the sum of such amount and the limits of all other similar coverage that applies as primary coverage.

4. Except as provided in 3. above, the physical damage coverages provided by this policy apply as excess coverage.

If similar coverage provided by one or more sources other than the *State Farm Companies* also applies as excess coverage for the same *loss* or expense, then the *State Farm Companies* will pay the proportion of the *loss* or expense payable as excess that the maximum amount that may be paid by the *State Farm Companies* bears to the sum of such amount and the limits of all other similar coverage that applies as excess coverage.

**Financed Vehicle**

1. If a creditor is shown on the Declarations Page, then any Comprehensive Coverage or Collision Coverage provided by this policy applies to that creditor's interest in *your car*. Coverage for the creditor's interest is only provided for a *loss* that is payable to *you*.

However, if this policy is cancelled or nonrenewed, then *we* will provide coverage for the creditor's interest until *we* notify the creditor of the termination of such coverage. This coverage for the creditor's interest is only provided for a *loss* that would have been payable to *you* if this policy had not been cancelled or nonrenewed. The date such termination is effective will be at least 10 days after the date *we* mail or

electronically transmit a notice of the termination to the creditor.

2. If *we* pay such creditor, then *we* are entitled to the creditor's right of recovery against *you* to the extent of *our* payment. *Our* right of recovery does not impair the creditor's right to recover the full amount of its claim.

**Our Payment Options**

**Comprehensive Coverage and Collision Coverage**

a. *We* may, at *our* option, make payment to one or more of the following for *loss* to a *covered vehicle owned by you*:

(1) *You*;

(2) The repairer; or

(3) A creditor shown on the Declarations Page, to the extent of its interest.

b. *We* may, at *our* option, make payment to one or more of the following for *loss* to a *covered vehicle not owned by you*:

(1) *You*;

(2) The owner of such vehicle;

(3) The repairer; or

(4) A creditor, to the extent of its interest.

2. **Emergency Road Service Coverage and Car Rental and Travel Expenses Coverage**

*We* may, at *our* option, make payment to one or more of the following:

a. *You*;

b. The *insured* who incurred the expense; or

c. Any party that provided the service for which payment is owed.

---

# DEATH, DISMEMBERMENT AND LOSS OF SIGHT COVERAGE AND LOSS OF EARNINGS COVERAGE

## DEATH, DISMEMBERMENT AND LOSS OF SIGHT COVERAGE

This policy provides Death, Dismemberment and Loss of Sight Coverage if "S" is shown under "SYMBOLS" on the Declarations Page.

**Additional Definition**

*Insured* means a *person* whose name is shown under "Death, Dismemberment and Loss of Sight Coverage Persons Insured" on the Declarations Page.

**Insuring Agreement**

*We* will pay the highest applicable benefit shown in the following Death, Dismemberment and Loss of Sight Benefits Schedules if an *insured*:

1. dies; or

2. suffers dismemberment or permanent loss of sight, as described in the schedule;

as the direct result of an accident that involves the use of a land motor vehicle or any type of trailer as a vehicle and not due to any other cause.

The *insured* must be *occupying* or be struck as a *pedestrian* by a land motor vehicle or any type of trailer at the time of the accident. The death, dismemberment, or permanent loss of sight must occur within 90 days immediately following the date of the accident.

**Benefit**

The applicable benefit shown in the schedule is the most *we* will pay for any one *insured* in any one accident. Any benefit paid or payable for dismemberment or permanent loss of sight reduces the death benefit.

The benefits shown in the schedules are doubled for an *insured* who at the time of the accident was *occupying a private passenger car* and using a seat belt in the manner recommended by the vehicle's manufacturer.

**Death, Dismemberment and Loss of Sight Benefits Schedules**

If the amount shown on the Declarations Page for the *insured* is $5,000, then *we* will pay the applicable benefit shown below for death or for the described dismemberment or permanent loss of sight:

| | |
|---|---|
| Death | $5,000 |
| Loss of both hands, both feet, all sight of both eyes; one hand and one foot; or one hand or one foot and all sight of one eye. | $5,000 |
| Loss of one hand or one foot, or all sight of one eye | $2,500 |
| Loss of the thumb and a finger on one hand; or any three fingers | $1,500 |
| Loss of any two fingers | $1,000 |

The hand must be cut off through or above the wrist. The foot must be cut off through or above the ankle. The whole thumb or finger must be cut off.

If the amount shown on the Declarations Page for the *insured* is $10,000, then *we* will pay the applicable benefit shown below for death or for the described dismemberment or permanent loss of sight:

| | |
|---|---|
| Death | $10,000 |
| Loss of both hands, both feet, all sight of both eyes; one hand and one foot; or one hand or one foot and all sight of one eye. | $10,000 |
| Loss of one hand or one foot, or all sight of one eye | $5,000 |
| Loss of the thumb and a finger on one hand; or any three fingers | $3,000 |
| Loss of any two fingers | $2,000 |

The hand must be cut off through or above the wrist. The foot must be cut off through or above the ankle. The whole thumb or finger must be cut off.

## LOSS OF EARNINGS COVERAGE

This policy provides Loss of Earnings Coverage if "Z" is shown under "SYMBOLS" on the Declarations Page.

**Additional Definitions**

*Insured* means a *person* whose name is shown under "Loss of Earnings Coverage – Persons Insured" on the Declarations Page.

*Total Disability* means the *insured's* inability to work, either full or part time, in his or her occupation or any other similar occupation for which he or she is reasonably fitted by education, training, or experience.

*Weekly Earnings* means 85% of all earnings for the *insured's* services before any deductions. When *weekly earnings* cannot be determined on a weekly basis, an average will be used. The average is 85% of the total earnings for the 52 weeks just prior to the accident divided by 52.

**Insuring Agreement**

*We* will pay the *insured* his or her loss of *weekly earnings*, which occur while the *insured* is living, due to continuous *total disability* that:

1. is the direct result of *bodily injury* caused by an accident that involves the use of a land motor vehicle or any type of trailer as a vehicle and not due to any other cause. At the time of the accident, the *insured* must be *occupying* or be struck as a *pedestrian* by a land motor vehicle or any type of trailer; and.

2. starts within 20 days immediately following the date of the accident and lasts for a period of at least 30 consecutive days. *We* will not pay for the first seven days of the 30 day period.

**Limit**

The most *we* will pay any one *insured* is:

1. $250 for each full workweek of *total disability*; and

2. a pro rata portion of $250 for less than a full workweek of *total disability*.

Subject to the workweek limit, the most *we* will pay any one *insured* for all loss of *weekly earnings* due to any one accident is $15,000.

*We* will pay once every two weeks the *insured's* loss of *weekly earnings* owed.

**Exclusions – Death, Dismemberment and Loss of Sight Coverage and Loss of Earnings Coverage.**

DEATH, DISMEMBERMENT AND LOSS OF SIGHT COVERAGE AND LOSS OF EARNINGS COVERAGE DO NOT APPLY TO AN *INSURED*:

1. WHILE IN THE COURSE AND SCOPE OF HIS OR HER EMPLOYMENT IN A *CAR BUSINESS*;

2. WHILE *OCCUPYING*, LOADING, OR UN-LOADING:

   a. AN EMERGENCY VEHICLE IN THE COURSE AND SCOPE OF HIS OR HER EMPLOYMENT;

   b. A VEHICLE OTHER THAN AN EMERGENCY VEHICLE, WHILE USED IN THE:

      (1) *INSURED'S* BUSINESS; OR

      (2) COURSE AND SCOPE OF HIS OR HER EMPLOYMENT IN OTHER THAN A *CAR BUSINESS*.

      This exclusion (2.b.) does not apply if the vehicle is a *private passenger car*;

   c. A MILITARY VEHICLE; OR

   d. A VEHICLE WHILE IT IS:

      (1) BEING PREPARED FOR, USED IN PRACTICE FOR, OR OPERATED IN ANY RACING CONTEST, SPEED CONTEST, HILL-CLIMBING CONTEST, JUMPING CONTEST, OR ANY SIMILAR CONTEST; OR

      (2) ON A TRACK DESIGNED PRI-MARILY FOR RACING OR HIGH-SPEED DRIVING. This exclusion (2.d.(2)) does not apply if the vehicle is being used in connection with an activity other than racing, high-speed driving, or any type of competitive driving;

3. WHILE *OCCUPYING*, LOADING, UN-LOADING, OR WHO IS STRUCK AS A *PE-DESTRIAN* BY:

   a. A MOTOR VEHICLE THAT RUNS ON RAILS OR CRAWLER TREADS;

   b. A MOTOR VEHICLE THAT IS DE-SIGNED FOR USE PRIMARILY OFF PUBLIC ROADS WHILE OFF PUBLIC ROADS; OR

   c. A MOTOR VEHICLE OR ANY TYPE OF TRAILER, EITHER OF WHICH IS LO-CATED FOR USE AS A DWELLING OR OTHER PREMISES; OR

4. FOR DEATH, DISMEMBERMENT, LOSS OF SIGHT, OR *TOTAL DISABILITY* THAT RESULTS FROM:

   a. WAR OF ANY KIND;

   b. NUCLEAR REACTION, RADIATION OR RADIOACTIVE CONTAMINATION FROM ANY SOURCE, OR THE ACCIDENTAL OR INTENTIONAL DETONATION OF, OR RELEASE OF RADIATION FROM, ANY NUCLEAR OR RADIOACTIVE DEVICE;

   c. THE DISCHARGE OF A FIREARM;

   d. EXPOSURE TO *FUNGI*;

   e. SUICIDE OR ATTEMPTED SUICIDE REGARDLESS OF WHETHER THE *IN-SURED* WAS SANE OR INSANE; OR

   f. DISEASE except pus-forming infection due to *bodily injury* sustained in the accident.

**Our Payment Options — Death, Dismemberment and Loss of Sight Coverage and Loss of Earnings Coverage**

*We* may, at *our* option, make payment to one or more of the following:

1. The *insured*;

2. The *insured's* surviving spouse;

3. A parent or guardian of the *insured*, if the *in-sured* is a minor or an incompetent *person*; or

4. A *person* or organization authorized by law to receive such payment.

## INSURED'S DUTIES

1. **Notice to Us of an Accident or Loss**

   The *insured* must give *us* or one of *our* agents notice of the accident or *loss* as soon as reason-ably possible. The notice must give *us*:

   a. *your* name;

   b. the names and addresses of all *persons* in-volved in the accident or *loss*;

   c. the hour, date, place, and facts of the acci-dent or *loss*; and

   d. the names and addresses of witnesses to the accident or *loss*.

2. **Notice to Us of a Claim or Lawsuit**

   a. If a claim is made against an *insured*, then that *insured* must immediately send *us* every demand, notice, and claim received.

   b. If a lawsuit is filed against an *insured*, then that *insured* must immediately send *us* every summons and legal process received.

**3. Insured's Duty to Cooperate With Us**

a. The *insured* must cooperate *with us* and, when asked, assist *us* in:

(1) making settlements;

(2) securing and giving evidence; and

(3) attending, and getting witnesses to attend, depositions, hearings, and trials.

b. The *insured* must not, except at his or her own cost, voluntarily:

(1) make any payment to others; or

(2) assume any obligation to others

unless authorized by the terms of this policy.

c. If requested by *us*, a *person* or organization making claim under this policy must give *us* proof of loss on forms *we* furnish.

**4. Questioning Under Oath**

Under:

a. Liability Coverage, each *insured*;

b. Medical Payments Coverage, Uninsured Motor Vehicle Coverage, Death, Dismemberment and Loss of Sight Coverage, or Loss of Earnings Coverage, each *insured*, or any other *person* or organization making claim or seeking payment; and

c. Physical Damage Coverages, each *insured* or owner of a *covered vehicle*, or any other *person* or organization making claim or seeking payment;

must, at *our* option, submit to an examination under oath, provide a statement under oath, or do both, as reasonably often as *we* require. Such *person* or organization must answer questions under oath, asked by anyone *we* name, and sign copies of the answers. *We* may require each *person* or organization answering questions under oath to answer the questions with only that *person's* or organization's legal representative, *our* representatives, any *person* or *persons* designated by *us* to record the questions and answers, and no other *person* present.

**5. Other Duties Under the Physical Damage Coverages**

When there is a *loss*, *you* or the owner of the *covered vehicle* must:

a. protect the *covered vehicle* from additional damage. *We* will pay any reasonable expense incurred to do so that is reported to *us*;

b. make a prompt report to the police when the *loss* is the result of theft;

c. allow *us* to:

(1) inspect any damaged property before its repair or disposal;

(2) test any part or equipment before that part or equipment is removed or repaired; and

(3) move the *covered vehicle* at *our* expense in order to conduct such inspection or testing;

d. provide *us* all:

(1) records;

(2) receipts; and

(3) invoices

that *we* request and allow *us* to make copies; and

e. not abandon the *covered vehicle* to *us*.

**6. Other Duties Under Medical Payments Coverage, Uninsured Motor Vehicle Coverage, Death, Dismemberment and Loss of Sight Coverage, and Loss of Earnings Coverage**

A *person* making claim under:

a. Medical Payments Coverage, Uninsured Motor Vehicle Coverage, Death, Dismemberment and Loss of Sight Coverage, or Loss of Earnings Coverage must:

(1) notify *us* of the claim and give *us* all the details about the death, injury, treatment, and other information that *we* may need as soon as reasonably possible after the injured *insured* is first examined or treated for the injury. If the *insured* is unable to give *us* notice, then any other *person* may give *us* the required notice;

(2) be examined as reasonably often as *we* may require by physicians chosen and paid by *us*. A copy of the report will be sent to the *person* upon written request;

(3) provide written authorization for *us* to obtain:

(a) medical bills;

(b) medical records;

(c) wage, salary, and employment information; and

(d) any other information *we* deem necessary to substantiate the claim.

If an injured *insured* is a minor, unable to act, or dead, then his or her legal representative must provide *us* with the written authorization.

If the holder of the information refuses to provide it to *us* despite the

authorization; then, at *our* request the *person* making claim or his or her legal representative must obtain the information and promptly provide it to *us*; and

(4) allow *us* to inspect the vehicle that the *insured occupied* in the accident;

b. Medical Payments Coverage must, when *we* require, execute a reimbursement and subrogation agreement that *we* furnish and return that agreement to *us*.

c. Uninsured Motor Vehicle Coverage must:

(1) report an accident, involving a motor vehicle whose owner and driver remain unknown, to the police within 24 hours and to *us* within 30 days; and

(2) send *us* immediately a copy of all lawsuit papers if the *insured* files a lawsuit against the party liable for the accident; and

d. Loss of Earnings Coverage must:

(1) make a claim under this policy;

(2) report to *us* when that *person* has a *total disability* and

(3) provide proof of continued *total disability* when *we* ask for it.

**GENERAL TERMS**

1. **When Coverage Applies**

The coverages provided by this policy are shown on the Declarations Page and apply to accidents and *losses* that occur during the policy period. The policy period is shown on the Declarations Page and is for successive periods of six months each for which the renewal premium is paid. The policy period begins and ends at 12:01 A.M. Standard Time at the address shown on the Declarations Page.

2. **Where Coverage Applies**

The coverages provided by this policy are shown on the Declarations Page and apply to accidents and *losses* that occur:

a. in the United States of America and its territories and possessions;

b. in Canada; and

7. **Other Duties Under Uninsured Motor Vehicle Property Damage Coverage**

When there is *property damage*, *you* must:

a. report the accident to *us* within 30 days;

b. protect the damaged property from additional damage. *We* will pay any reasonable expense incurred to do so that is reported to *us*;

c. allow *us* to:

(1) inspect any damaged property before its repair or disposal;

(2) test any part or equipment before that part or equipment is removed or repaired or impaired; and

(3) move the damaged property at *our* expense in order to conduct such inspection or testing;

d. provide *us* all:

(1) records;

(2) receipts; and

(3) invoices

that *we* request and allow *us* to make copies;

e. not abandon the damaged property to *us*; and

f. send *us* immediately a copy of all lawsuit papers if the *insured* files a lawsuit against the party liable for the accident.

*WE HAVE NO DUTY TO PAY ANY CLAIM OR COST THAT WOULD NOT BE PAYABLE UNDER THIS POLICY IF THE ACCIDENT OR LOSS HAD OCCURRED IN THE*

while a vehicle (or) which coverage is provided by this policy is being shipped between the ports of the United States of America, its territories, its possessions, and Canada.

Death, Dismemberment and Loss of Sight Coverage and Loss of Earnings Coverage apply anywhere in the world.

3. **Limited Coverage in Mexico**

This policy does not provide Mexican auto insurance and does not comply with Mexican auto insurance requirements. If *you* or any other *insured* plan to drive in Mexico, then auto insurance providing coverage in Mexico should be purchased from a Mexican insurance company.

Subject to the above paragraph, the following coverages apply in Mexico but only for accidents and *losses* that occur in Mexico within 50

miles of the United States of America border and only for **insureds** as defined under each of the following coverages.

a. **Liability Coverage**

For claims brought against an **insured** in Mexico, the **Supplementary Payments** provision of this policy's Liability Coverage is changed to read:

**We** may, in addition to the damages, described in item 1. of the **Insuring Agreement** of this policy's Liability Coverage, pay or reimburse, at **our** option, reasonable attorney fees for an attorney licensed in Mexico to appear for and provide advice to **insureds** as defined under this policy's Liability Coverage. The amount of such attorney fees incurred by an **insured** must be reported to **us** before **we** will make payment.

b. **Medical Payments Coverage**

c. **Physical Damage Coverages**

Any amount payable for the repair or replacement of the **covered vehicle** under the **Limits and Loss Settlement** – **Comprehensive Coverage and Collision Coverage** provision of this policy will be limited to the cost to repair or replace the **covered vehicle** in the United States of America.

**WE** HAVE NO DUTY TO PROVIDE A DEFENSE FOR **YOU** OR ANY OTHER **INSURED** IN ANY CRIMINAL, CIVIL, OR OTHER ACTION.

**WE** HAVE NO DUTY TO PAY ANY CLAIM OR COST THAT WOULD NOT BE PAYABLE UNDER THIS POLICY IF THE ACCIDENT OR **LOSS** HAD OCCURRED IN THE STATE OF OHIO IN THE UNITED STATES OF AMERICA.

All other policy provisions not in conflict with the provisions in this **Limited Coverage in Mexico** provision of this policy apply.

**If Other Coverage Applies**

Any coverage provided by this **Limited Coverage in Mexico** provision is excess over any other applicable insurance.

**Legal Action Against Us**

Any legal action against **us** arising out of an accident or **loss** occurring in Mexico must be brought in a court that has jurisdiction in the state of Ohio in the United States of America.

4. **Newly Owned or Newly Leased Car**

If **you** want to insure a **car** newly **owned by you** with the **State Farm Companies** after that **car**

ceases to be a **newly acquired car**, then **you** must either:

a. request **we** replace the **car** currently shown on the Declarations Page of this policy with the **car** newly **owned by you** and pay **us** any added amount due. If **you** make such request while this policy is in force and:

(1) before the **car** newly **owned by you** ceases to be a **newly acquired car**, then that **car** newly **owned by you** will be insured by this policy as **your car** beginning on the date the **car** newly **owned by you** is delivered to **you**. The added amount due will be calculated based on that date; or

(2) after the **car** newly **owned by you** ceases to be a **newly acquired car**, then that **car** newly **owned by you** will be insured by this policy as **your car** beginning on the date and time **you** make the request. The added amount due will be calculated based on that date; or

b. apply to the **State Farm Companies** for a separate policy to insure the **car** newly **owned by you**. Such policy will be issued only if both the applicant and the vehicle are eligible for coverage at the time of the application.

5. **Changes to This Policy**

a. **Changes in Policy Provisions**

**We** may only change the provisions of this policy by:

(1) issuing a revised policy booklet, a revised Declarations Page, or an endorsement; or

(2) revising this policy to give broader coverage without an additional premium charge. If any coverage provided by this policy is changed to give broader coverage, then **we** will give **you** the broader coverage as of the date **we** make the change effective in the state of Ohio without issuing a revised policy booklet, a revised Declarations Page, or an endorsement.

b. **Change of Interest**

(1) No change of interest in this policy is effective unless **we** consent in writing.

(2) Except under Death, Dismemberment and Loss of Sight Coverage and Loss of Earnings Coverage, if a named insured shown on the Declarations Page dies,

then the definition of *insured* under each of the coverages provided by this policy is changed to include:

(a) any *person* with lawful custody of *your car*, a *newly acquired car*, or a *temporary substitute car* until a legal representative is qualified; and then

(b) the legal representative of the deceased named insured.

This only applies while such *person* is maintaining or using *your car*, a *newly acquired car*, or a *temporary substitute car*.

Policy notice requirements are met by mailing the notice to the most recent policy address that *we* have on record for the deceased named insured.

**Joint and Individual Interests**

If *you* consists of more than one *person* or entity, then each acts for all to change or cancel the policy.

**Change of Policy Address**

*We* may change the named insured's policy address as shown on the Declarations Page and in *our* records to the most recent address provided to *us* by:

(1) *you*; or

(2) the United States Postal Service.

**6. Premium**

a. Unless as otherwise provided by an alternative payment plan in effect with the *State Farm Companies* with respect to the premium for this policy, the premium is due and payable in full on or before the first day of the policy period shown on the most recently issued Declarations Page or Renewal Notice.

b. The renewal premium for this policy will be based upon the rates in effect, the coverages carried, the applicable limits, deductibles, and other elements that affect the premium that apply at the time of renewal.

c. The premium for this policy may vary based upon:

(1) the purchase of other products or services from the *State Farm Companies*;

(2) the purchase of products or services from an organization that has entered into an agreement or contract with the *State Farm Companies*. The *State Farm Companies* do not warrant the merchantability, fitness, or quality of

any product or service offered or provided by that organization; or

(3) an agreement concerning the insurance provided by this policy, that the *State Farm Companies* has with an organization of which *you* are a member, employee, subscriber, licensee, or franchisee.

d. The premium for this policy is based upon information *we* have received from *you* or other sources. *You* must inform *us* if any information regarding the following is incorrect or incomplete, or changes during the policy period, and *you* must answer questions *we* ask regarding the following:

(1) *Your car*, or its use, including annual mileage;

(2) The *persons* who regularly drive *your car*, including newly licensed family members;

(3) *Your* marital status; or

(4) The location where *your car* is primarily garaged.

If the above information or any other information used to determine the premium is incorrect, incomplete, changes during the policy period, or is not provided to *us* when *we* ask, then *we* may decrease or increase the premium during the policy period. If *we* decrease the premium during the policy period, then *we* will provide a refund or a credit in the amount of the decrease. If *we* increase the premium during the policy period, then *you* must pay the amount of the increase.

**7. Renewal**

*We* will renew any Liability Coverage, Medical Payments Coverage, and Uninsured Motor Vehicle Coverage provided by this policy for a sufficient number of policy periods to provide coverage during the two-year Guarantee Period shown on the Declarations Page. *We* may amend policy provisions relating to those coverages at the beginning of any policy period within the initial two-year Guarantee Period or any subsequent Guarantee Period.

**8. Nonrenewal**

a. If *we* decide not to renew this policy, then, at least 30 days before the end of the Guarantee Period, *we* will mail or deliver a nonrenewal notice to the most recent policy address that *we* have on record for the named insured who is shown on the Declarations Page.

21

b. This policy will not be terminated prior to the end of the two year Guarantee Period shown on the Declarations Page. At the end of the current Guarantee Period, a subsequent Guarantee Period may be provided. These agreements to renew are void if:

(1) **you** fail to pay the premium when due; or

(2) the policy is canceled according to 9. Cancellation below.

## 9. Cancellation

a. **How You May Cancel**

**You** may cancel this policy by providing to **us** advance notice of the date cancellation is effective. **We** may confirm the cancellation in writing.

b. **How and When We May Cancel**

**We** may cancel this policy by mailing or delivering a written notice to the most recent policy address that **we** have on record for the named insured who is shown on the Declarations Page. The notice will provide the date cancellation is effective.

(1) If **we** mail or deliver a cancellation notice:

(a) during the first 89 days following this policy's effective date;

(b) because the premium is not paid when due; or

(c) applicable to only coverages other than Liability Coverage, Medical Payments Coverage, or Uninsured Motor Vehicle Coverage

then the date cancellation is effective will be at least 10 days after the date **we** mail or deliver the cancellation notice.

Otherwise, the date cancellation is effective will be at least 30 days after the date **we** mail or deliver the cancellation notice.

(2) After this policy has been in force for more than 89 days, unless notice of cancellation was mailed to **you** within that time, **we** agree that Liability Coverage, Medical Payments Coverage, and Uninsured Motor Vehicle Coverage will not be canceled unless:

(a) **you** have made a material misrepresentation to **us** in obtaining or renewing this policy or in the filing of a claim;

(b) **you**, or any **resident relative** has lost driving privileges by the suspension, revocation, or expiration of his or her driver's license. If the **person** who lost driving privileges is other than **you** or the principal operator, **we** will not cancel this policy during the two year Guarantee Period. However, **we** have the right to exclude such **person** from any coverage provided by this policy anytime during the two-year Guarantee Period by mailing notice to **you** at least 30 days before the exclusion is effective;

(c) **you** fail to pay the premium when due; or

(d) **you** move to, or change **your** car's registration to, a state or country where **we** are not authorized to write coverage.

However, the above limitations on **our** right to cancel do not apply if one of the **State Farm Companies** expressed a willingness to issue another policy.

c. **Return of Unearned Premium**

If **you** cancel this policy, then premium may be earned on a short rate basis. If **we** cancel this policy, then premium will be earned on a pro rata basis and any unearned premium will be returned prior to the cancellation effective date.

## 10. Assignment

No assignment of benefits or other transfer of rights is binding upon **us** unless approved by **us**.

## 11. Bankruptcy or Insolvency of the Insured

Bankruptcy or insolvency of the **insured** or his or her estate will not relieve **us** of **our** obligations under this policy.

## 12. Concealment or Fraud

There is no coverage under this policy if **you** or any other **person** insured under this policy has made false statements with the intent to conceal or misrepresent any material fact or circumstance in connection with any claim under this policy.

## 13. Our Right to Recover Our Payments

Death, Dismemberment and Loss of Sight Coverage and Loss of Earnings Coverage payments are not recoverable by **us**. Under all other coverages, the following apply:

a. **Subrogation**

(1) If *we* are obligated under this policy to make payment to or for a *person* or organization who has a legal right to collect from another *person* or organization, then *we* will be subrogated to that right to the extent of *our* payment.

(2) The *person* or organization to or for whom *we* make payment must help *us* recover *our* payments by:

(a) doing nothing to impair that legal right;

(b) holding all rights of recovery against all liable parties in trust for *our* benefit;

(c) doing whatever is necessary to protect and preserve *our* rights to recover;

(d) executing any documents *we* may need to assert that legal right; and

(e) taking legal action through *our* representatives when *we* ask.

(3) *We* have priority over an *insured* for any amounts recovered from the liable party to the extent of *our* payments to or on behalf of that *insured*.

b. **Reimbursement**

If *we* make payment under this policy and the *person* or organization to or for whom *we* make payment recovers or has recovered from another *person* or organization, then the *person* or organization to or for whom *we* make payment must:

(1) hold in trust for *us* the proceeds of any recovery; and

(2) reimburse *us* to the extent of *our* payments, costs incurred, and fees of collection.

14. **Legal Action Against Us**

Legal action may not be brought against *us* until there has been full compliance with all the provisions of this policy. In addition, legal action may only be brought against *us* regarding:

a. Liability Coverage after the amount of damages an *insured* is legally liable to pay has been finally determined by:

(1) judgment after an actual trial, and any appeals of that judgment if any appeals are taken; or

(2) agreement between the claimant and *us*.

b. Medical Payments Coverage if the legal action relating to this coverage is brought against *us* within four years immediately following the date of the accident.

c. Uninsured Motor Vehicle Coverage if the *insured* or that *insured's* legal representative within:

(1) three years immediately following the date of the accident; or

(2) one year after the date the *insured* receives notice of insolvency if the insurer of the *uninsured motorist* is declared insolvent

presents an Uninsured Motor Vehicle Coverage claim to *us*, and files a lawsuit in accordance with the **Deciding Fault and Amount** provision of the Uninsured Motor Vehicle Coverage.

No legal action may be brought against *us* relating to Uninsured Motor Vehicle Coverage for any cause of action that arises out of or is related to that coverage until there has been full compliance with its **Consent to Settlement** and **Deciding Fault and Amount** provisions.

d. Uninsured Motor Vehicle Property Damage Coverage if the *insured* or that *insured's* legal representative within:

(1) three years immediately following the date of the accident; or

(2) one year after the date the *insured* receives notice of insolvency if the insurer of the *uninsured motorist* is declared insolvent

presents an Uninsured Motor Vehicle Coverage claim to *us*, and files a lawsuit in accordance with the **Deciding Fault and Amount** provision of the Uninsured Motor Vehicle Property Damage Coverage.

e. Physical Damage Coverages if the legal action relating to these coverages is brought against *us* within one year immediately following the date of the accident or *loss*.

15. **Choice of Law**

Without regard to choice of law rules, the law of the state of:

a. Ohio will control, except as provided in b. below, in the event of any disagreement as to the interpretation and application of any provision in this policy; and

b. Illinois will control in the event of any disagreement as to the interpretation and application of this policy's:

    (1) Mutual Conditions provision found on the most recently issued Declarations Page, if this policy was issued by the State Farm Mutual Automobile Insurance Company; or

    (2) Participating Policy provision found on the most recently issued Declarations Page, if this policy was issued by any subsidiary or affiliate of the State Farm Mutual Automobile Insurance Company.

16. **Interest**

In accordance with section 1343.03 of the Ohio Revised Code, any interest owed on any amounts due and payable under this policy shall be paid at a simple rate of 5 percent per annum.

17. **Severability**

If any provision of this policy is held invalid or unenforceable by a court that has jurisdiction, then:

a. such provision will remain in full force to the extent not held invalid or unenforceable; and

b. all other provisions of this policy will remain valid and enforceable.